THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT RUFFINO, Appellant.

Second Department, September 23, 1985

**APPEARANCES OF COUNSEL**

*Schwartz, DiBlasi & Cimini* (*Barry A. Schwartz* of counsel), for appellant.

*John J. Santucci, District Attorney* (*Malvina Nathanson* of counsel; *Andrea Shapiro* on the brief), for respondent.

**OPINION OF THE COURT**

BRACKEN, J.

■ Although a motion to suppress identification testimony made pursuant to CPL article 710 is the exclusive method of challenging the admissibility of such evidence (CPL 710.70 [3]), a defendant is also entitled to have the jury consider the fairness of pretrial identification procedures in determining whether

testimony identifying him as the perpetrator of a crime is sufficient to establish guilt beyond a reasonable doubt. In this case, after the suppression court had determined that a pretrial lineup had not been unduly suggestive, the trial court struck certain testimony proffered by the defense regarding the composition and conduct of that lineup, and advised the jury that there had already been a judicial determination of the fairness of the lineup. We hold that this was error which deprived defendant of a fair trial and, therefore, we reverse the judgment of conviction and order a new trial.

Defendant was charged with robbery and related crimes arising from the forcible theft of a pocketbook from Karen Busso on October 12, 1982. At a pretrial *Wade* hearing, Ms. Busso testified that on the date of the crime, at approximately 7:55 P.M., she was walking home from work when she noticed a man walking toward her. The man approached her, nudged her with his body and then stepped back and said, "give me your bag". Although it was dark, the area was illuminated by a street light, and the man was standing only one or two feet from Ms. Busso. She observed that he was wearing a three-piece suit, with a dark tie and light shirt, and there was a gun in his waistband. He had a mustache, and was otherwise clean-shaven. The man told Ms. Busso not to scream, and he grabbed her pocketbook and ran off. According to Ms. Busso, the entire incident lasted for "a couple of minutes" and she was able to see the thief's face for most of that time.

On October 17, 1982, five days after the robbery, Ms. Busso viewed a photo array at the local precinct and picked out a photograph of defendant. Several days later, she viewed additional photographs and selected two pictures of defendant, one of which was identical to the photograph she had picked out on the prior occasion. On February 3, 1983, Ms. Busso viewed a six-man lineup from which she selected defendant. According to Ms. Busso, the detective assigned to the case had advised her that the person whose picture she had previously picked out would be in the lineup, but the detective denied having done so. A photograph of the lineup was received in evidence at the hearing.

Marvyn Kornberg, an attorney who had represented defendant at the lineup, testified for the defense at the *Wade* hearing. According to Mr. Kornberg the photograph received in evidence was not a fair and accurate representation of the lineup because it had been taken from an angle rather than from the front position where the lineup had been viewed by the complainant; and, therefore, the photograph failed to reveal significant distin-

guishing features between defendant and four of the other five participants in the lineup.

The suppression court held that although the photographic identification procedure utilized by the police in this case was impermissibly suggestive, the circumstances of the crime itself provided an independent basis from which Ms. Busso could make an in-court identification of defendant at trial. In addition, the court found that the characteristics and features of the lineup participants were sufficiently similar, and the procedure attendant to the lineup sufficiently free of suggestion, to permit the introduction at trial of testimony regarding the lineup identification.

At the subsequent trial, Ms. Busso identified defendant in court as the person who had robbed her and further testified to having identified defendant at the lineup. In addition, the prosecutor elicited testimony from Ms. Busso regarding the similarities between defendant and the other five lineup participants.

Mr. Kornberg testified for the defense, as he had at the *Wade* hearing, regarding the events that had transpired at the lineup. In particular, Mr. Kornberg described the efforts of the police to obtain satisfactory "fillers" to appear with his client; his own request to postpone the lineup until "fillers" more closely resembling defendant could be found; and his unsuccessful attempt to have a particular individual, who had been convicted of certain unrelated robberies, stand in the lineup as well. Mr. Kornberg further described the differences he had observed with respect to the physical characteristics and dress of the various lineup participants, and he also testified regarding the objections he had made at the time to law enforcement personnel as to the participation of the assembled "fillers" in the lineup with his client.

Thereafter, on its own motion, and over defense objection, the trial court struck the testimony of Mr. Kornberg relating to "the composition of the lineup, his description of the lineup, and his comments regarding the fairness of the lineup". The court instructed the jury to disregard such testimony, stating: "[T]he question of the fairness of the police procedures regarding the lineup is not an issue for your consideration at this trial. That question has been heard before another Court, after a hearing and after testimony from witnesses, and that Court has ruled that the lineup procedure was fair".

Prior to summations, the court admonished both attorneys to avoid any reference to the stricken testimony. Defense counsel argued in his summation that this was a case of mistaken

identification, but he did not specifically mention the lineup. The prosecutor, however, did argue to the jury that the lineup had been fair and could not have impaired the accuracy of the complainant's identification. The court, in its charge, instructed the jury on the general principles for evaluating evidence of identification, but reminded the jury that the fairness of the lineup had already been determined and could not be considered. Defense counsel objected to this portion of the charge.

On appeal, defendant challenges both the denial of his motion to suppress identification testimony and the trial court's refusal to permit the jury to consider the fairness of the lineup in determining whether defendant's identity had been proven by the People beyond a reasonable doubt.

■ Defendant's first contention need not long detain us. Notwithstanding the suppression court's determination that the photographic procedures utilized in this case were unduly suggestive, the complainant's in-court identification, and evidence of the lineup identification, were properly admitted. The evidence of Ms. Busso's opportunity to view defendant during the perpetration of the crime was sufficient to establish an independent basis (*People v Adams,* 53 NY2d 241), and the lineup identification, which was made approximately 3½ months after the suggestive photographic procedures, was sufficiently attenuated and was not itself suggestive (*People v Johnson,* 106 AD2d 469).

Defendant's second contention is more troubling. In striking Mr. Kornberg's testimony and advising the jury that the fairness of the lineup had already been judicially determined, the trial court relied principally on CPL 710.70 (3). That subdivision provides that a motion to suppress evidence pursuant to article 710 of that law is the exclusive method of challenging the admissibility of such evidence, except that a defendant may attempt to establish at trial that evidence of a pretrial statement allegedly made by him should be disregarded by the trier of fact on the ground that such statement was involuntarily made.

■ In our view, Criminal Term's reliance on CPL 710.70 (3) was misplaced. Insofar as is pertinent to the issue herein, the statute simply provides that a motion to suppress evidence pursuant to CPL article 710 is the exclusive method of challenging the *admissibility* of potential identification testimony at a prospective trial due to an improperly made previous identification of a defendant by a prospective witness (CPL 710.70 [3]; 710.20 [6]). However, the weight to be accorded such identification testimony, once it is found to be admissible after a *Wade*

hearing pursuant to CPL article 710, is a matter solely within the province of the trier of facts. Nothing in the language of the statute precludes consideration of the fairness or suggestiveness of a previous identification of the defendant by the witness in assessing the weight to which the witness' identification testimony is entitled and, ultimately, whether that testimony is sufficient to establish guilt beyond a reasonable doubt.

Moreover, the second paragraph of CPL 710.70 (3), which ensures a defendant the opportunity of proving to the trier of facts that his statement was involuntarily made, simply guarantees the right to a jury trial on the issue of voluntariness, as provided in the Constitution of this State (NY Const, art I, § 2; *People v Huntley,* 15 NY2d 72, 78). The language of the second paragraph does not, however, prohibit a jury from considering evidence, other than evidence on the issue of voluntariness, where such evidence is relevant in determining the accuracy and credibility of a witness' identification testimony.

The risk of inaccuracy and error in eyewitness identification evidence has long been recognized (*see, e.g., United States v Wade,* 388 US 218, 228-229; *People v Whalen,* 59 NY2d 273, 278). In particular, it is recognized that "[a] major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification" (*United States v Wade, supra,* at p 228). In order to reduce the risk of convicting a defendant as a result of an erroneous identification, trial courts are encouraged, in appropriate cases, to provide juries with expanded identification charges that direct the jurors to consider both the truthfulness and the accuracy of the eyewitness' testimony (*People v Whalen, supra,* at p 279; *People v Daniels,* 88 AD2d 392, 400-402). Thus, where, as in this case, there exists an issue of identification, the jury should be instructed to examine and evaluate the many factors upon which the accuracy of such testimony turns including, among others, the witness' opportunity and capacity to observe and remember the physical characteristics of the perpetrator at the time of the crime (*People v Daniels, supra,* at pp 401-402; *see also,* 1 CJI [NY] 10.01, 10.20). It follows logically that where there has been a lineup or other pretrial identification procedure, the trier of facts should also be permitted to consider the suggestiveness of that procedure, and the extent to which it may have influenced the witness' present identification, for " '[i]t is a matter of common experience that, once a witness has picked out the accused at the lineup, he is not likely to go back on his word later on, so that in practice the

issue of identity may * * * for all practical purposes be determined there and then, before the trial' " (*United States v Wade,* 388 US 218, 229, *supra,* quoting Williams & Hammelmann, *Identification Parades, Part 1,* 1963 Crim L Rev 479, 482). Where the People introduce evidence at trial that a witness identified defendant at a pretrial identification procedure (CPL 60.25, 60.30), as was the case here, defendant may attempt to establish that the pretrial procedure was itself so suggestive as to create a reasonable doubt regarding the accuracy of that identification and of any subsequent in-court identification. This is so, notwithstanding that a court has already denied a motion to suppress and determined that the pretrial procedure was not constitutionally defective. Moreover, even where the evidence of a prior identification is suppressed after a *Wade* hearing, or where such evidence is simply inadmissible on the People's direct case (e.g., a prior photographic identification), a defendant may attempt, as a matter of trial tactics, to impeach the eyewitness' in-court identification through the introduction of evidence of the suggestiveness of such prior identification.

However, a defendant is not entitled at a subsequent trial to relitigate the entire motion to suppress identification testimony. The issue at a *Wade* hearing pertains to the constitutionality of any prior identification procedure, including questions of due process and the right to counsel, and whether the unconstitutionality of any such procedure has tainted the witness' in-court identification of the accused so as to require its suppression as well. The issue at trial, on the other hand, is that of the defendant's guilt, and the trier of facts must determine whether defendant's identity as the perpetrator of the crime has been proven beyond a reasonable doubt. Where a witness testifies at trial regarding an identification of the accused, whether that testimony describes an in-court identification or a pretrial identification procedure, the trier of facts must be permitted to consider whether such testimony is worthy of belief, or whether it is lacking in reliability due to the suggestiveness of that identification procedure or of some other procedure employed prior thereto. To that end, the trier of facts may properly be presented with proof relevant to the suggestiveness of any such procedures. "This includes evidence of pre-lineup and post-lineup suggestions as well as all the factors which enter into the determination of fairness of the lineup conduct, the photo identification procedures, and the supporting and negating factors of independent source or reliability" (Sobel, Eyewitness Identification § 9.3, at 9-13 [2d ed 1984]). However, "[t]he jury is not concerned with whether the Sixth Amendment right to counsel

or due process was violated at a pretrial confrontation. These are preliminary issues of fact and law conditioning the admissibility of the identification testimony at the trial. As such, these issues are for the pretrial suppression hearing judge" (Sobel, *op. cit.* § 9.3, at 9-12).

In this case, Criminal Term erred in striking the testimony of Mr. Kornberg in its entirety. Those portions of his testimony regarding the manner in which the police arranged for and conducted the lineup, and his own attempts to influence the composition of that lineup, were properly excluded, inasmuch as those matters had no relevance as to whether Ms. Busso's identification of defendant was the product of improper suggestion. However, Mr. Kornberg's description of the difference he had observed with respect to the physical characteristics and dress of the various lineup participants, and his claim that the lineup photograph in evidence did not accurately depict the lineup as it had been viewed by Ms. Busso, were clearly relevant to the jury's assessment of the reliability of her identification and, therefore, his testimony in those areas should not have been stricken.

The prejudice accruing to defendant from the foregoing error was compounded by the trial court's improper disclosure to the jury, on two occasions, that another Judge had already ruled that the lineup was fair (*see, e.g., People v Brainard,* 56 AD2d 633). Realistically, once the jury became aware of the judicial imprimatur which the lineup had received, it was unlikely to give much serious consideration to defendant's claim that the suggestiveness of the lineup had influenced the witness' identification. Thus, the sole theory relied upon by the defendant herein, i.e., mistaken identity, was severely undermined by the revelation to the jury of the suppression court's determination.

In the context of this case, which rested entirely on the identification of a single witness, and in which defendant interposed an alibi defense, we cannot say that the evidence of guilt was overwhelming, nor that these errors were harmless beyond a reasonable doubt (*People v Crimmins,* 36 NY2d 230), and, accordingly, we reverse and order a new trial.

MOLLEN, P. J., GIBBONS and THOMPSON, JJ., concur.

Judgment of the Supreme Court, Queens County, rendered October 4, 1983, as amended October 19, 1983, reversed, on the law, and new trial ordered.