■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v NAVARRO STEPHENS and OLIN STEPHENS, Respondents.—Appeal by the People from an order of the Supreme Court, Queens County (Zelman, J.), dated March 20, 1986, which granted that branch of the defendants' omnibus motion which was to suppress the complainant's identification testimony.

Ordered that the order is reversed, on the law and the facts, that branch of the defendants' omnibus motion which was to suppress identification testimony by the complainant is denied, and the matter is remitted to the Supreme Court, Queens County, for further proceedings.

The defendants were indicted on charges of robbery in the first degree and robbery in the second degree as a result of an incident that occurred on June 15, 1985, in which they allegedly stole a medallion from the complainant. The defendants were arrested on June 20, 1985, placed in separate lineups and identified by the complainant. Following a *Wade* hearing, the hearing court granted the defendants' motion to suppress the complainant's identification testimony. The People appeal from the order granting suppression.

At the suppression hearing, Sergeant Steele testified that on June 15, 1985, he interviewed the complainant who stated that he was at a party earlier that day and was approached by two men who stole a medallion he had been wearing around his neck. The complainant stated that he knew one of his attackers as Andre Stephens. The second man was allegedly Andre's brother, the defendant Navarro Stephens, whose nickname was "Frog". The complainant followed the 2 men into the street; however, he stopped his pursuit when 1 of the men displayed a gun.

The complainant provided the officer with a Brooklyn address where he believed the robbers resided. On June 18, 1985, Sergeant Steele visited the defendants' home and spoke with their mother. The officer requested that she have the defendants contact him at the precinct when they returned home. On the evening of June 20, 1985, the defendants, accompanied by their mother and a cousin, came to the precinct. The defendants spoke with Sergeant Steele and were informed that they would be placed in lineups.

At that time, Sergeant Steele telephoned the complainant's home and arranged to have the complainant come down to the precinct. The officer did not remember whether the complainant's mother accompanied the complainant to the precinct that evening. Although the officer did recall that the defendants' mother and the complainant's mother did speak about the robbery at some point, the officer did not remember whether that meeting occurred on the evening that the lineups were conducted.

The officer then arranged two separate lineups for each of the defendants using fillers from the neighborhood. Since the defendant Navarro Stephens had braided hair, Sergeant Steele arranged to have the fillers in that lineup wear hats to cover their hair. After viewing the two lineups, the complainant identified the defendants as the men who stole his medallion.

The defendants' mother, Isalee Stephens, testified on behalf of the defendants, and stated that sometime after she arrived at the precinct on the evening of June 20, 1985, Sergeant Steele introduced her to the complainant's mother in the presence of the defendants. At the officer's suggestion, the two women spoke privately in an attempt to resolve the matter. However, after their discussion, the complainant's mother stated that she wanted to "leave [the matter] up to the officer". Ms. Stephens then returned to the room with her sons.

Ms. Stephens also testified that the defendant Olin Stephens' full name is Olin Andre Stephens and that his brother's nickname is "Frog".

The defendant Olin Stephens testified that shortly after he arrived at the precinct on the evening in question with his brother, mother and cousin, Sergeant Steele telephoned the complainant's mother and told her, "I have the two guys down here that robbed your son" and requested that she have the complainant come down to the precinct. Sometime thereafter, the complainant's mother was escorted into the room where the defendants were seated and Sergeant Steele introduced her to Ms. Stephens by stating, "This is their mother, the mother of the two guys that robbed your son". Olin Stephens stated that his cousin then asked the officer, "If that is the mother of the guy that is complaining about us robbing him for his chain, how can she see us, if he [sic] is going to be in a lineup, when she can go downstairs and tell what I [sic] had on". The officer did not respond.

On cross-examination, the defendant Olin Stephens stated that he did not know the complainant nor did he see him on the evening of June 20, 1985.

The hearing court concluded that the identification procedures utilized by the police herein were tainted because the complainant's mother was permitted to observe the defendants immediately prior to the lineups and thereby created the "possibility" that she told her son what the defendants were wearing before he viewed the lineups. The hearing court also indicated that the defendant Navarro Stephens' lineup was suggestive because he was the only participant with braided hair. The court therefore determined that, given the absence of sufficient evidence to establish an independent basis for the complainant's identification of the defendants, his identification testimony should be suppressed. We disagree and, accordingly, reverse.

It is well established that on a motion to suppress eyewitness identification testimony, the People bear the initial burden of coming forward with evidence to establish the reasonableness of the police conduct and the lack of suggestiveness of the pretrial identification procedures. Once that burden is met, the defense bears the burden of proving that a pretrial identification procedure was unduly suggestive (see, People v Rahming, 26 NY2d 411; People v Jackson, 108 AD2d 757; People v Sutton, 47 AD2d 455). Based upon a review of the record herein, we conclude that the People met their burden of coming forward to establish that the police officer's conduct herein was reasonable and that the defendants' lineups were not suggestive. The photographs of the two lineups demonstrate that the fillers in each lineup possessed the same physical characteristics as the respective defendants (see, People v Cunningham, 110 AD2d 708). The fact that the defendant Navarro Stephens was the only participant of the lineup whose hair was in braids is not a basis upon which to conclude that the lineup was suggestive since the law does not require that lineup fillers have the exact same physical characteristics as the defendant but rather the fillers must merely possess reasonably similar physical characteristics as the accused (see, People v Diaz, 138 AD2d 728; People v Bunting, 134 AD2d 646; People v Tatum, 129 Misc 2d 196). In any event, the police took reasonable steps to conceal the defendant's braided hair by requiring that the lineup participants wear hats to cover their hair. Moreover, the fact that the defendant Olin Stephens was the only individual in his lineup who was wearing a red sweatshirt did not taint the identification procedure since the red sweatshirt was not part of the description given by the complainant to Sergeant Steele after the robbery.

Given the evidence presented by the prosecution at the suppression hearing, the burden of proof shifted to the defense to establish the the identification procedures were unduly suggestive. We disagree with the hearing court's conclusion, as well as that of our dissenting colleague, that the defense met this burden based on the fact that the complainant's mother had an opportunity to observe the defendants prior to the lineups. There is absolutely no evidence in the record to indicate that after observing the defendants, the complainant's mother had an opportunity to speak with her son before he viewed the lineups. In fact, there is no indication in the record that the complainant was present at the precinct at the same time as his mother. The "possibility" that the complainant's mother told her son what the defendants were wearing

before he identified them is pure speculation and, as such, is insufficient to satisfy the defendants' burden of proof on a motion to suppress. Accordingly, we find that the defendants' motion to suppress the complainant's identification testimony was improperly granted. Mollen, P. J., Mangano and Bracken, JJ., concur.

Lawrence, J., dissents and votes to affirm, with the following memorandum: I find no reason for disturbing the hearing court's determination, which was based upon its acceptance of the testimony of the defendants' witnesses, to the effect that there was a clear "indication that the police had engaged in improper conduct [prior to the time that the actual lineups were set up and viewed by the complainant, which was] calculated to influence the [complainant's] identification of the defendant[s]" (cf., People v Baity, 139 AD2d 521, 522). As noted by the majority, Sergeant Steele did not recall whether on the night of the lineups, the complainant's mother had accompanied the complainant to the precinct or whether the mother of the complainant and the mother of the defendants had met. Further, neither the complainant nor his mother were called to testify at the pretrial hearing to clarify what had occurred prior to the lineups. I therefore find that the People failed to meet their burden of establishing the reasonableness of the police conduct immediately prior to the actual lineups (see, People v Jackson, 108 AD2d 757, 758). Accordingly, the hearing court properly suppressed the complainant's proposed testimony as to the lineup identifications of the defendants.

In addition, I find that the People failed to meet their burden of proving by clear and convincing evidence that the complainant's in-court identifications of the defendants would be based upon a source independent of the tainted lineup procedures (see, People v Jackson, supra, at 757-758). The testimony of Sergeant Steele concerning certain statements made by the complainant, who did not testify at the pretrial hearing, was insufficient to establish that the in-court identifications of the defendants by the complainant would have an independent basis apart from the lineup viewings (see, People v Riley, 70 NY2d 523, 531-532). The People's reliance on Phipps v Follette (428 F2d 912, cert denied 400 US 908) is misplaced since in that case the identifying witness testified at the pretrial suppression hearing.