■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HAROLD PARKER, Also Known as SAELON CHARLESTON, Appellant. [684 NYS2d 300] —Spain, J. Appeal from a judgment of the County Court of Schenectady County (Scarano, Jr., J.), rendered October 6, 1995, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and criminal sale of a controlled substance in the third degree.

On September 7, 1993, James Murray, a Senior Investigator with the State Police assigned to the Community Narcotics Enforcement Team, made an undercover buy of $20 worth of crack-cocaine from an individual in the City of Schenectady, Schenectady County. After the sale, Murray notified the Schenectady Police Department of the sale and provided them with a description of the seller. On September 29, 1993, Murray viewed a photo array of eight individuals and identified defendant as the individual who sold him the crack-cocaine on September 7, 1993. In November 1993 defendant was indicted in a three-count indictment.

Prior to defendant's trial a *Wade* hearing was held wherein defendant sought to suppress Murray's identification on the ground that the photo array was unduly suggestive. Defendant also argued that Murray should not be allowed to make an in-court identification of defendant insofar as Murray lacked an independent basis for such an identification. Upon completion of the hearing County Court denied the motion to suppress. Following a jury trial, defendant was convicted of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. County Court sentenced defendant to two concurrent terms of imprisonment of 8⅓ to 25 years. Defendant appeals.

We affirm. Defendant contends that the 22-day period which elapsed between the day the sale occurred and the day of the photo array gives rise to a very substantial likelihood of misidentification and, further, that because there was only one

other picture in the photo array which displayed an individual with dred locks, the photo array was unduly suggestive. The People bear the initial burden of establishing the reasonableness of police conduct and the absence of suggestiveness in a photo array (*see, People v Douglas*, 238 AD2d 733, 734, *lv denied* 90 NY2d 892). The burden then shifts to the defendant to establish that the procedure was unduly suggestive (*see, id.*, at 734; *People v Stephens*, 143 AD2d 692, 695). A photographic array is deemed suggestive if a photograph therein depicts a unique characteristic which draws the viewer's attention so as to indicate that the police have selected a particular individual (*see, People v Williams [Griswold]*, 243 AD2d 833, 836, *lvs denied* 91 NY2d 925, 931; *People v Brown*, 169 AD2d 934, 935, *lv denied* 77 NY2d 958; *People v Emmons*, 123 AD2d 475, *lv denied* 69 NY2d 827).

The record reveals that at the *Wade* hearing, Schenectady Police Officer Gary Maher testified that he showed Murray a series of eight photographs of eight black males which bore no distinctive markings or writing; that the eight individuals depicted in these photos, with the exception of one individual, all appeared to be approximately the same age; and that some of the individuals had facial hair and some had varying hair lengths. Moreover, although defendant's photo shows him with dred locks, there was another individual in the photo array who also had dred locks and further testimony at the *Wade* hearing indicated that Murray picked defendant out of the group of photographs without hesitation and without prompting. Furthermore, in the absence of any actual prejudice to defendant, we do not find that the mere 22-day passage of time establishes "a very substantial likelihood of * * * misidentification" as described in *Neil v Biggers* (409 US 188, 198). We find no reason to disturb the findings of the suppression court, which are entitled to great weight (*see, People v Prochilo*, 41 NY2d 759, 761).

We also reject defendant's assertion that there was no independent basis by which Murray could have identified defendant in court. It is well settled that even where a pretrial identification procedure is unduly suggestive, an in-court identification is nevertheless permissible if the eyewitness had sufficient opportunity to observe the defendant such that the identification has a basis independent of the pretrial identification (*see, People v Quinones*, 228 AD2d 796, 797). Here, Murray testified that at the time the sale occurred it was daylight and that prior to the sale he observed defendant for 30 seconds. Throughout this transaction Murray remained within three

feet of defendant, looking directly at him the entire time, and then returned to his car and continued to observe defendant for approximately 10 to 15 more seconds. Although Murray estimated that he observed defendant for a total of 70 seconds, his observations were close up and in daylight. The reliability of this identification is supported by the fact that it was "made by [a] trained and experienced undercover police officer[ ] who closely observed defendant during a face-to-face narcotics buy" (*People v Fulton*, 223 AD2d 932, 933; *see, People v Wharton*, 74 NY2d 921).

Finally, given the nature of the crime and defendant's prior criminal background, we find that the sentence is neither harsh nor excessive (*see, People v McGarry*, 219 AD2d 744, *lv denied* 87 NY2d 848).

Mikoll, J. P., Crew III, Yesawich Jr. and Graffeo, JJ., concur. Ordered that the judgment is affirmed.