THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KASHIF MCDONALD, Appellant. [30 NYS3d 241]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Del Giudice, J.), rendered September 9, 2008, convicting him of murder in the second degree and robbery in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Holdman, J.), of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is reversed, on the law, that branch of the defendant's omnibus motion which was to suppress identification testimony is granted, and a new trial is ordered, to be preceded by a hearing to determine whether an independent source for the identifications exists.

On December 9, 2005, three armed perpetrators allegedly committed a robbery at a store and, during the course thereof, shot and killed one of the store's employees. The defendant was arrested in connection therewith.

At a *Wade* hearing (*see United States v Wade*, 388 US 218 [1967]), Detective Michael McDermott testified that, on January 8, 2006, two witnesses, Jeff Clyne and Ronald Seeram, each identified the defendant as one of the perpetrators upon viewing certain photographs from the police department's photo manager system. McDermott explained that the photo manager system generates screens displaying six photographs at one time based on certain age and physical appearance criteria entered into a computer. According to McDermott, during the photographic identification procedures, each witness was seated in a different area of the precinct station house, on opposite sides of the detective squad room, and at a different computer terminal. He estimated that the witnesses were approximately 20 feet apart.

McDermott supervised Seeram's photographic identification

procedure. Notably, McDermott failed to preserve a screen printout of any of the photo arrays viewed by Seeram, including the one from which Seeram purportedly identified the defendant. Instead, at the hearing, McDermott produced a single photograph of the defendant. This photograph, however, was dated January 9, 2006, not January 8, 2006.

According to McDermott, another detective supervised Clyne's photographic identification procedure and was responsible for entering the specific criteria into the computer utilized by Clyne. That detective was not produced at the *Wade* hearing. Nevertheless, through McDermott's testimony, the People were permitted at the hearing to introduce a photo array apparently depicting a computer screen of six photographs, one of which depicted the defendant.

Thereafter, lineup identification procedures were conducted. Only the detective assigned to conduct the lineup at which Clyne purportedly made an identification of the defendant testified at the *Wade* hearing. The detective who supervised the lineup at which Seeram purportedly identified the defendant was not produced at the *Wade* hearing. At the conclusion of the hearing, the Supreme Court concluded that the identification procedures were not unduly suggestive.

The Supreme Court erred in denying that branch of the defendant's omnibus motion which was to suppress identification testimony. "[U]nduly suggestive pretrial identification procedures violate due process and therefore are not admissible to determine the guilt or innocence of an accused" (*People v Chipp*, 75 NY2d 327, 335 [1990]). When a defendant challenges an identification procedure as unduly suggestive, the People have the initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness (*see People v Coleman*, 73 AD3d 1200, 1203 [2010]; *People v Stephens*, 143 AD2d 692, 695 [1988]; *see also People v Rahming*, 26 NY2d 411 [1970]). This requirement "rests upon a recognition that 'in many instances a defendant simply does not know the facts surrounding a pretrial identification procedure and thus cannot make specific factual allegations' " (*People v Coleman*, 73 AD3d at 1203, quoting *People v Rodriguez*, 79 NY2d 445, 453 [1992]; *see* CPL 710.60 [3] [b]). Once the People meet their burden, the defendant bears the ultimate burden of proving that a pretrial identification procedure was unduly suggestive (*see People v Dobbins*, 112 AD3d 735, 736 [2013]; *People v Coleman*, 73 AD3d at 1203; *People v Stephens*, 143 AD2d at 695).

The People's failure to preserve the photo array from which

Seeram identified the defendant gives rise to a presumption of suggestiveness (*see People v Dobbins*, 112 AD3d at 736; *People v Redding*, 65 AD3d 1059, 1060 [2009]). While the People can overcome that presumption "by presenting sufficient evidence of nonsuggestiveness, such as by reconstructing the photo array from related materials" (*see People v Dobbins*, 112 AD3d at 736), they failed to do so here.

At the suppression hearing, McDermott testified that he did not preserve the photo arrays viewed by Seeram because the computer that displayed those arrays was not attached to a printer. He stated that after Seeram identified the defendant from a photo array, McDermott used another computer to print out a single photograph of the defendant using the defendant's NYSID number, and then showed that photograph to Seeram. It cannot be said that this testimony was sufficient to dispel any inference of suggestiveness. McDermott did not explain why he did not attach a printer to the computer Seeram was using, or why he did not attempt to reconstruct the photo array (*see id.*). Moreover, the single photograph was not signed by Seeram, and was dated January 9, 2006, the day following Seerem's photographic identification procedure.

Further, the People failed to produce the detective who conducted Clyne's photographic identification procedure, or the detective who conducted Seeram's lineup identification procedure. Contrary to our dissenting colleague's determination, McDermott did not conduct either of those procedures, and, therefore, could not provide competent evidence as to the circumstances thereof and what, if anything, transpired during those identification procedures (*see People v Coleman*, 73 AD3d at 1203).

Under these circumstances, the People failed to meet their initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness with respect to any of the pretrial identification procedures (*see People v Ortiz*, 90 NY2d 533, 538 [1997]; *People v Coleman*, 73 AD3d at 1203).

In addition, at a voir dire hearing held outside the presence of the jury during the trial, the Supreme Court improperly curtailed the defendant's cross-examination of McDermott as to how a photo array (referred to as exhibit 1), which was first disclosed at the time of trial, was generated. At the hearing, McDermott acknowledged that his handwritten notes on exhibit 1 corresponded with Clyne and Seeram's descriptions of the perpetrators. Exhibit 1 was dated December 10, 2005, which was the day after the subject shooting occurred. Despite

the date shown on that photo array, McDermott testified that it was generated *after* Clyne and Seeram had already identified the defendant in January of 2006. He further testified that the array was generated so as to include a photo of the defendant, as well as five other individuals who had been arrested with the defendant on prior occasions. When McDermott was confronted with the fact that the defendant's photograph was not contained within exhibit 1, the court curtailed the defense counsel's questioning of McDermott as to how the photo array was generated. McDermott then testified that exhibit 1 was merely used as scrap paper, and that it was never shown to either Clyne or Seeram.

"Where a witness testifies at trial regarding an identification of the accused, whether that testimony describes an in-court identification or a pretrial . . . procedure, the trier of facts must be permitted to consider whether such testimony is worthy of belief, or whether it is lacking in reliability due to the suggestiveness of that identification procedure or of some other procedure employed prior thereto" (*People v Ruffino*, 110 AD2d 198, 203 [1985]; *see People v Castricone*, 198 AD2d 765, 766 [1993]; *People v Malone*, 173 AD2d 160, 161 [1991]). Here, contrary to the Supreme Court's determination, defense counsel should have been permitted to question McDermott about exhibit 1 in front of the jury so that the jury could consider whether McDermott's testimony was worthy of belief and reliable not only with respect to the handwritten notes contained on exhibit 1, but also as to the circumstances of that photo array's generation, and whether it was shown to the witnesses as part of a pretrial identification procedure.

In sum, although no single factor is determinative, under the totality of the circumstances, we conclude that the Supreme Court should have granted that branch of the defendant's omnibus motion which was to suppress identification testimony, and that the defendant is entitled to a new trial, to be preceded by a hearing to determine whether an independent source for the identifications exists.

The defendant's remaining contentions either are without merit or need not be reached in light of our determination. Rivera, J.P., Duffy and Barros, JJ., concur.

Roman, J., dissents, and votes to affirm the judgment, with the following memorandum: I disagree with the majority's determination that the Supreme Court should have granted those branches of the defendant's omnibus motion which were to suppress testimony regarding Ronald Seeram's photographic and lineup identifications, and Jeff Clyne's photographic

identification. For the reasons set forth below, I find that the People met their initial burden of establishing the reasonableness of the police conduct and the lack of undue suggestiveness with respect to these procedures, and the defendant failed to prove that the procedures were unduly suggestive. Additionally, I disagree with the majority that the court improperly limited the defendant's cross-examination of Detective Michael McDermott.

With respect to the People's failure to preserve the photographic array viewed by Seeram, I agree that such failure gives rise to a presumption of suggestiveness with respect to that photographic identification procedure (*see People v Bridges*, 63 AD3d 752, 753 [2009]; *People v Wedgeworth*, 156 AD2d 529, 529 [1989]). However, contrary to the majority's conclusion, the People presented sufficient evidence to rebut that presumption (*see People v Reaves*, 112 AD3d 746, 747 [2013]; *People v Bridges*, 63 AD3d at 753). At the *Wade* hearing (*see United States v Wade*, 388 US 218 [1967]), McDermott testified that on January 8, 2006, Clyne and Seeram were at opposite sides of one room as they viewed photographs from the police department's photo manager system, which generated six photographs at a time based on the criteria entered into the computer system. McDermott testified that the description entered into the computer viewed by Clyne was a male black, 18 to 25 years old, weighing 130 to 160 pounds, and that the description entered into Seeram's computer was a male black, 18 to 26 years old, weighing 130 to 165 pounds. McDermott further testified that Clyne viewed approximately 54 pages, or 324 photographs, before identifying the defendant, while Seeram viewed approximately 32 pages, or 192 photographs, before he identified the defendant.

This Court has consistently recognized that where, as here, "a photographic identification procedure involves showing a witness a preexisting file consisting of a large number of photographs, the 'sheer volume and scope of [the] procedure militates against the presence of suggestiveness' " (*People v Mason*, 138 AD2d 411, 412 [1988], quoting *People v Jerome*, 111 AD2d 874, 874 [1985]; *see People v Fields*, 66 AD3d 799, 799 [2009]; *People v Ashby*, 289 AD2d 588, 588 [2001]; *People v Burgos*, 204 AD2d 344, 345 [1994]; *People v Faulk*, 192 AD2d 717, 717 [1993]; *People v Stokes*, 139 AD2d 785, 785 [1988]; *People v Ludwigsen*, 128 AD2d 810, 810 [1987]). The majority's reliance on *People v Dobbins* (112 AD3d 735 [2013]) is misplaced. There, this Court held that the People's failure to preserve the original printout of a photographic array gave rise

to a presumption of suggestiveness, which the People failed to rebut, inasmuch as the detective testifying at the suppression hearing "did not memorialize and could not recall the specific information that he entered into the photo manager system which generated the photographic array, did not memorialize and could not recall how many photographs the complainant viewed, and did not memorialize and could not recall for how long the complainant was viewing photographs" (*id*. at 736). Here, by contrast, McDermott specifically testified regarding the criteria that was entered into the computer system, the number of photographs that Clyne and Seeram viewed prior to making an identification, and the time frame in which they viewed the photographs.

Furthermore, the defendant failed to preserve for appellate review his contention that the People did not meet their initial burden of establishing the reasonableness of the police conduct and the lack of undue suggestiveness as to Clyne's photographic identification because they did not call Detective Van Pelt, who also participated in the photographic identification procedures, as a witness (*see People v Fields*, 66 AD3d at 799). In any event, that contention, and the defendant's further claim that the People did not meet their initial burden with respect to Seeram's lineup identification because the detective who conducted that procedure was not called as witness, are without merit.

At the hearing, McDermott testified that during the photographic identification procedures, Clyne and Seeram were seated on opposite sides of the same room, approximately 20 feet apart from each other. McDermott testified that he went back and forth to consult with his colleague, Van Pelt, who primarily stayed with Clyne, while McDermott primarily stayed with Seeram. McDermott further testified that Clyne and Seeram did not communicate with each other while viewing the photographs, and that he instructed both of them to let him know if they made an identification. Additionally, as set forth above, McDermott testified concerning the specific information that was entered into the photo manager system, and the number of photographs Clyne and Seeram each viewed. Thus, the instant case is distinguishable from *People v Coleman* (73 AD3d 1200 [2010]), where the People offered only the testimony of a detective who was not present during a prior photographic array identification procedure, and thus, "could not answer any questions as to what, if anything, was said before or during the identification procedure, or provide any details as to the attendant circumstances" (*id*. at 1203).

As to the lineup, Detective Carlo D'Ambrosi testified that he picked up both Clyne and Seeram, and transported them to the precinct station house. Upon arrival, he escorted them to the Community Affairs office, and instructed them not to talk to each other. D'Ambrosi testified that he separated Clyne and Seeram, and that he stayed with them while the lineup was being prepared. D'Ambrosi testified that Seeram was escorted to the viewing room by Detective Routledge while D'Ambrosi stayed with Clyne. Referring to the lineup report which was admitted into evidence at the hearing, D'Ambrosi testified that Seeram identified the defendant from the lineup. Specifically, the lineup report provides that when Seeram was asked where he recognized the defendant from, he replied, "It's number 5 he was the first guy in." Additionally, the lineup report, which lists each participant's age, height, and weight, reflects that the participants were of relatively similar appearance (*see People v Ortiz*, 61 AD3d 1003, 1003 [2009]; *People v Matthews*, 57 AD3d 1008, 1009 [2008]; *People v Jean-Baptiste*, 57 AD3d 566, 567 [2008]).

Based on the foregoing, I find that the People presented sufficient evidence regarding the circumstances surrounding the viewing of the photographs and the lineup, and met their initial burden of establishing the reasonableness of the police conduct and the lack of suggestiveness of the subject pretrial identification procedures. The burden then shifted to the defendant, who failed to satisfy his ultimate burden of proving that the identification procedures were unduly suggestive. The defendant's contention that Clyne and Seeram could have communicated with each other while at the precinct station house during the photographic identification procedure, or in the Community Affairs office prior to viewing the lineup, is purely speculative and unsupported by the hearing record (*see People v Reyes*, 60 AD3d 873, 874 [2009]; *People v Celestin*, 231 AD2d 736, 736 [1996]). Therefore, the Supreme Court properly denied those branches of the defendant's omnibus motion which were to suppress testimony regarding Seeram's and Clyne's photographic identifications, and Seeram's lineup identification.

Further, contrary to the majority's determination, I find that the Supreme Court did not improperly limit the defendant's cross-examination of McDermott concerning the photographic array dated December 10, 2005. Following an informal hearing, the court credited McDermott's testimony that he had made the handwritten notations on the array, and that this array was never shown to Clyne or Seeram (*see generally People v Fletcher*, 130 AD3d 1063, 1064 [2015], *lv granted* 26 NY3d

1044 [2015]). Finally, the court providently exercised its discretion in denying the defendant's application to reopen the *Wade* hearing based on the disclosure of this array, which did not include a photograph of the defendant, since the defendant failed to demonstrate that the new facts proffered in support of his motion were likely to affect the original determination (*see People v Guerrier*, 129 AD3d 863, 863 [2015]; *People v Moore*, 118 AD3d 916, 918 [2014]).

Accordingly, I would affirm the judgment.