People v Aponte (2022 NY Slip Op 02813)

People v Aponte

2022 NY Slip Op 02813

Decided on April 27, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 27, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
COLLEEN D. DUFFY
VALERIE BRATHWAITE NELSON
LINDA CHRISTOPHER, JJ.

2017-12101
 (Ind. No. 8667/15)

[*1]The People of the State of New York, respondent,
v
Bryan Aponte, appellant.

Patricia Pazner, New York, NY (Cynthia Colt of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Solomon Neubort, and Rebecca Height of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Neil Jon Firetog, J.), rendered August 30, 2017, convicting him of murder in the second degree, attempted murder in the second degree, assault in the second degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and the matter is remitted to the Supreme Court, Kings County, for a new trial.
In August 2017, the defendant was convicted of murder in the second degree and related charges arising out of the shooting death of a victim and injury to two other victims during a botched theft of items from the victims' vehicles. At trial, the defendant presented a misidentification defense—third-party culpability—contending that his codefendant, Ryan Cruzado, not he, shot the victims. Two of the three eyewitnesses testified at trial that the shooter was wearing sunglasses, and surveillance video of the events immediately preceding the shooting demonstrated that Cruzado, not the defendant, was wearing sunglasses. In addition, the surveillance video before the shooting showed that the defendant was wearing a gray hoodie and Cruzado was wearing a red, yellow, and black hoodie. Although the eyewitnesses testified that the shooter was wearing a gray hoodie or a gray or white hoodie, one of them admitted that immediately after the shooting he told the police that "the person" was wearing red. Another eyewitness testified that he told a detective that the shooter was wearing a yellow and black hoodie. Video evidence from the scene showed that, immediately after the shooting, Cruzado exchanged his multicolored hoodie for the gray hoodie worn by the defendant.
During the trial, the Supreme Court granted the People's application, over the defendant's objection, to admit into evidence a hearsay statement by an unidentified woman that the man wearing all gray had the firearm. The court also denied the defendant's request to enter into evidence photographs of the defendant and Cruzado so that the jury could compare their likenesses.
The Supreme Court also prevented defense counsel from cross-examining a police witness about the age and physical characteristics of the fillers in the lineup in which the defendant [*2]was identified as the shooter.
Although the People did not object, the Supreme Court also precluded defense counsel during summation from asking the jury to consider the fairness and suggestiveness of the pretrial identification procedures and informed the parties and the jury that the court had already determined that the lineup was fair and not suggestive:
"[DEFENSE COUNSEL]: . . . Let's look at the descriptions of the people in the lineup. If you remember from the testimony of [the detective], the other people in the lineup were significantly younger or older than [the defendant], they weighed significantly less.
"THE COURT: Again, the lineup, the question you have is whether there's a misidentification and it's not 
"It's whether or not these people look similar and the fact that you can't have, you know, six identical people, just, that's never going to happen, so what you're looking for in a lineup 
"[DEFENSE COUNSEL]: Objection, judge. I object. I object to you testifying again, judge.
"THE COURT: First of all, I'm not testifying. I'm telling them what the law is. Now, you can't 
"The lineup has been reviewed by the Court and the lineup has been held to be constitutional and there's no 
"[DEFENSE COUNSEL]: Objection.
"THE COURT: There's no problem as to the lineup from a legal point of view. The question becomes whether or not there's suggestivity in the lineup and that's the only issue. . . .
"[DEFENSE COUNSEL]: . . . I submit that there's suggestion in these lineups. You be the judge of it, listen to [the detective's] testimony, have it read back, these people did not look like the suspect in the case. Ask yourself if Number 6 looks similar to Number 5. He's like a foot-and-a-half taller than [the defendant]. Number 4 and Number 1 are much younger. Number 2, Number 6 
"THE COURT: Again, objection sustained as to 
"You can't say that they're much younger. You can't say that.
"[DEFENSE COUNSEL]: . . . They look much younger or much older, they look taller or shorter. It's not a fair lineup.
"THE COURT: Objection sustained as to that. You can't say this is not a fair lineup, the Court has ruled.
"[DEFENSE COUNSEL]: It's a suggestive lineup.
"THE COURT: You can't say that, the Court has ruled that it is not a suggestive lineup. What you can say is that based upon the witnesses that this lineup was suggestive but the fact is from a legal point of view I ruled on it or some other judge has ruled on it, so you can't attack the legality of this lineup. That's not part of this argument. You can attack other things but not the legality of the lineup."
During defense counsel's summation, the Supreme Court also interrupted defense counsel's argument regarding a prior inconsistent statement that one of the eyewitnesses had made to an assistant district attorney:
"[DEFENSE COUNSEL]: We know that [one of the eyewitnesses] said to you in court that the shooter was wearing gray and we also know that 25 hours after the incident he told the D.A. under oath that the shooter was wearing a multi-colored coat.
"THE COURT: Objection sustained. He never said that, even in the inconsistent statements.
"[DEFENSE COUNSEL]: He said in the inconsistent statement a yellow hoodie with black lines running into it.
"THE COURT: I think he said black pull strings, but, again, it's through an interpreter. . . .
"[DEFENSE COUNSEL]: . . . The day after the incident he gave a description that's consistent with that photograph about Mr. Cruzado.
"THE COURT: Objection sustained, it's not the testimony."
The jury found the defendant guilty of murder in the second degree, attempted murder in the second degree, assault in the second degree, and criminal possession of a weapon in the second degree. For the reasons that follow, we reverse and remit the matter to the Supreme Court, Kings County, for a new trial.
"Although the law will allow a certain degree of judicial intervention in the presentation of evidence, the line is crossed when the judge takes on either the function or appearance of an advocate at trial" (People v Arnold, 98 NY2d 63, 67). "A closing argument is a basic element of a defense in a criminal trial" (People v Reina, 94 AD2d 727, 728). "The right of the defense to make an effective closing argument is substantially impaired when counsel is unjustifiably limited or repeatedly interrupted while making appropriate comment on matters of evidence adduced at trial" (id. at 728; see People v Gibian, 76 AD3d 583, 588).
"[A] defendant is . . . entitled to have the jury consider the fairness of pretrial identification procedures in determining whether testimony identifying him as the perpetrator of a crime is sufficient to establish guilt beyond a reasonable doubt" (People v Ruffino, 110 AD2d 198, 198-199). Thus, "[w]here the People introduce evidence at trial that a witness identified [the] defendant at a pretrial identification procedure, . . . [the] defendant may attempt to establish that the pretrial procedure was itself so suggestive as to create a reasonable doubt regarding the accuracy of that identification and of any subsequent in-court identification" (id. at 203 [citation omitted]). Here, the Supreme Court improperly impeded the defendant's defense of third-party culpability by limiting the defendant's cross-examination of the police witness regarding the lineup procedures, curtailing defense counsel's summation, and, sua sponte, improperly and erroneously instructing the jury and defense counsel in the presence of the jury that counsel could not argue that the lineup was unfair or suggestive, as the court had already found it fair and not suggestive (see id. at 198-199; see also People v McDonald, 138 AD3d 1027, 1030).
The Supreme Court's limitation of the defendant's cross-examination of the police witness and its sua sponte admonishments to defense counsel during summation improperly limited the defendant's right to challenge the lineup procedures as unfair and suggestive (see People v Ruffino, 110 AD2d at 203; see also People v McDonald, 138 AD3d at 1030). Moreover, the court erred in informing the jury and the parties in front of the jury that it had already determined that the pretrial identification procedure was fair and not suggestive, and that the lineup was "constitutional," wrongly intimating that those facts were not within the jury's province to determine (see People v Ruffino, 110 AD2d at 202-203).
The Supreme Court also substantially impaired the defendant's right "to make an effective closing argument" (People v Reina, 94 AD2d at 728) through sua sponte "objection sustained" interruptions without any actual objection being posited by the People. In fact, when the court interrupted defense counsel's argument regarding the prior inconsistent statement made by one of the eyewitnesses to an assistant district attorney (see id.), its comments were unsupported by the record, and they signaled to the jury that the court did not credit the translation of that witness's prior statement, which was made "through an interpreter." In sua sponte making these comments that were supported neither by the law nor the facts, the court took on the "appearance of an advocate" on behalf of the People (People v Arnold, 98 NY2d at 67; see People v De Jesus, 42 NY2d 519, 523-524).
The Supreme Court also erred in admitting into evidence the hearsay statement of an unidentified woman that a man "wearing all gray had the firearm" as an excited utterance exception to the hearsay rule (see People v Cummings, 31 NY3d 204, 209-211; People v Thelismond, 180 AD3d 1076, 1078). The record contained no evidence from which a trier of fact could reasonably infer that the statement was based on the woman's personal observation (see People v Cummings, 31 NY3d at 209-211; People v Thelismond, 180 AD3d at 1078).
Moreover, the Supreme Court should have granted the defendant's application to admit into evidence the photographs of the defendant and Cruzado to allow the jury to compare their likenesses, since, under the circumstances of this case, such evidence was highly probative of the defense of third-party culpability and plainly outweighed any danger of delay, prejudice, and confusion (see People v DiPippo, 27 NY3d 127, 135-136; People v Primo, 96 NY2d 351, 357).
Where, as here, proof of the defendant's guilt is not overwhelming, these errors were not harmless (see People v Crimmins, 36 NY2d 230, 241-242). Moreover, although the defendant's contention that he was deprived of a fair trial is unpreserved for appellate review, we reach it in the exercise of our interest of justice jurisdiction (see CPL 470.15[6][a]) and find that the cumulative effect of these errors, particularly the Supreme Court's intrusion into defense counsel's summation as an advocate for the People and its erroneous instructions on the law regarding the lineup, deprived the defendant of a fair trial (see People v Crimmins, 36 NY2d at 238; People v Reina, 94 AD2d at 728).
Accordingly, we reverse the judgment and remit the matter to the Supreme Court, Kings County, for a new trial.
In light of the foregoing, we need not reach the defendant's remaining contentions.
DILLON, J.P., DUFFY, BRATHWAITE NELSON and CHRISTOPHER, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court