■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v QUENTON BRATTON, Respondent.—Appeal by the People from an order of the County Court, Westchester County (Leary, J.), dated June 16, 1987, which granted that branch of the defendant's omnibus motion which was to suppress identification testimony. The People's notice of appeal from a decision of the

same court, dated September 24, 1985, is treated as a premature notice of appeal from the order.

Ordered that the order is reversed, on the law and the facts, that branch of the defendant's omnibus motion which was to suppress identification testimony is denied, and the matter is remitted to the County Court, Westchester County, for further proceedings.

On the evening of February 21, 1981, Dawn Moynihan and two of her friends were sitting in a parked van while another friend, the driver, went into a nearby delicatessen. Upon the driver's return, a man carrying a brick pushed his way into the van. Two other perpetrators who were standing next to the van had a knife and a gun. Ms. Moynihan, who was sitting in the rear of the van, observed the man with the brick stand in the front of the van and rummage through the console located between the two front seats. The interior of the van was illuminated by an inside dome light situated above the console and by street lights that provided sufficient light by which Ms. Moynihan estimated she could read a newspaper. After several minutes, the man with the brick stepped to the back of the van and took jewelry and other belongings from Ms. Moynihan and the other rear passengers. At one point, the man stood face to face with Moynihan and reached into her pants to determine whether she had other money or property. Ms. Moynihan testified that she observed the man's face during most of this period and saw it clearly enough that she was able to tell defense counsel on cross-examination the color of the man's eyes. Ms. Moynihan estimated that she was able to observe the man's face for approximately seven minutes during the robbery, which lasted about eight minutes.

Later that evening, Ms. Moynihan, together with the other victims, went to the police precinct and reported the robbery. At that time, Ms. Moynihan was shown several photographic albums of suspects but was unable to identify any of the photographs. The photographic albums were not preserved by the police.

Subsequent to the victims' initial review of the police photographic albums, the police received an anonymous telephone call implicating the defendant and two other men in the robbery. Based on this tip, the police prepared three photographic arrays containing photographs of the suspects. Each suspect's picture appeared in one of three arrays which contained a total of six photographs in all.

On February 24, 1981, Ms. Moynihan, together with the

other three victims, was brought to the police station to view the photographic arrays. Each victim viewed the photographic arrays separately. Upon viewing the second photographic array, Ms. Moynihan stated that she was reasonably certain that the defendant's photograph was that of the robber who entered the van three days previously. Ms. Moynihan did not recall how long it took her to identify the defendant's picture, although the police officer who supervised the viewing of the photographic arrays stated that Ms. Moynihan's selection of the defendant's photograph upon opening the second array folder was "[v]ery rapid". None of the other victims identified the defendant's photograph. While the photographic arrays were originally preserved by the police officer, they could not be located at the time of the suppression hearing.

Although a warrant was immediately issued for the defendant's arrest, he could not be located until August 1982, at which time he was arrested on the instant charges. Thereafter the defendant moved, *inter alia*, to suppress the identification testimony of Ms. Moynihan. Following a *Wade* hearing which was conducted in September 1984, the hearing court granted the defendant's motion to suppress the in-court identification testimony of Ms. Moynihan because it was tainted by an impermissibly suggestive viewing of the photographic array.

The hearing court correctly observed that the failure of the police to preserve a photographic array creates a presumption that the array was impermissibly suggestive *(see, People v Rahming,* 26 NY2d 411; *People v Scatliffe,* 117 AD2d 827, *lv denied* 67 NY2d 1056; *People v Lynch,* 117 AD2d 823, *lv denied* 68 NY2d 670). This presumption can be rebutted if other testimony and evidence in the record demonstrates that the procedures actually employed and the photographs utilized were not impermissibly suggestive *(see, People v Rahming, supra).* There is no direct evidence in the record indicating that the photographic array herein was suggestive. However, we conclude that the hearing court's factual determination herein (that the police testimony concerning the photographic array procedure, which was given over three years after the fact, was self-serving and insufficient to overcome the presumption of suggestiveness) was not so unsupported by the evidence as to necessarily warrant this court's interference *(see, People v Armstead,* 98 AD2d 726).

*However,* a subsequent in-court identification of the defendant will be permitted if it is shown that it is based upon the witness's independent opportunity to observe the perpetrator at the time of the crime *(see, People v Adams,* 53 NY2d 241,

251; *People v Rahming, supra; People v Watkins,* 121 AD2d 583, *lv denied* 68 NY2d 918). The evidence adduced at the suppression hearing herein clearly and convincingly demonstrated that Ms. Moynihan had an ample opportunity to closely observe the face of the perpetrator under adequate lighting conditions and that she retained an impression of his appearance independent of and untainted by any suggestiveness that the subsequent photographic array may have had, and hence possessed an independent basis for identifying the defendant. The hearing court attached undue significance to the fact that Ms. Moynihan stated for the first time at the *Wade* hearing that she was kneeling in the van during part of the robbery, rather than sitting or stooping. The evidence clearly indicates that Ms. Moynihan's position relative to the perpetrator did not impair her ability to observe him and that her prior omission of the incidental fact was not significant. The hearing court's further comment that the van's interior dome light was behind the perpetrator ignored the other evidence in the record indicating that there was adequate lighting.

In sum, we conclude that the hearing court's determination that there was an insufficient basis for Ms. Moynihan's in-court identification of the defendant to overcome the taint of the photographic array was contrary to the weight of the evidence *(see, People v Garafolo,* 44 AD2d 86, 88). In reaching this conclusion, we note that the defendant's challenges to the reliability of Ms. Moynihan's independent recollection based upon the corporeal identification at the felony hearing and the photographic identification at the Grand Jury proceeding, have not been preserved for appellate review and, in any event, are without merit. Mollen, P. J., Brown, Weinstein and Rubin, JJ., concur.