■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID P. CORDILIONE, Appellant.—Levine, J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered December 21, 1988, upon a verdict convicting defendant of the crimes of grand larceny in the third degree and criminal possession of stolen property in the fourth degree (two counts).

Defendant was charged and convicted of grand larceny in the third degree and two counts of criminal possession of stolen property in the fourth degree consisting of jewelry, silver and coins taken from Donald Garren in the Village of Endicott, Broome County. Defendant was a friend of Garren's son, Thomas, and had lived temporarily in the Garren home. Portions of the stolen items were recovered at the V.B.S. jewelry and precious metals store in Endicott, and other portions were recovered at Silver and Gold Connection, a retail store located at Oakdale Mall in the Village of Johnson City, Broome County. John Sowizral, the proprietor of V.B.S., testified that on December 10, 1987 a man came into the store and offered to sell a gold watch, silver bar and several silver dollars, which he purchased for $267.55. Payment was by a check made out, at the seller's request, to "Randy Oliver".

Later that day, a man attempted to cash the same check at the drive-up teller's window at the Chase Lincoln First Bank's branch in Endicott. The teller, Julie Almy, found inadequate the man's identification papers as Randy Oliver and asked him to speak to the bank manager, Sandra Harris. The man told Harris that he, Randy Oliver, previously had an account there. When the man's endorsement signature on the check did not match Oliver's handwriting on the signature card for the prior account, Harris refused to cash the check. After the man left by cab, Harris notified the Endicott police. Through the driver of the cab, the police learned that the man was dropped off at an address in Endicott where they found Thomas Garren, who denied any involvement with the check. Some two days later, defendant was arrested by the Endicott police on an unrelated warrant. However, defendant's involvement with the items sold at V.B.S. was already suspected by the police. Accordingly, photo arrays containing defendant's pictures were shown to Sowizral, the owner of V.B.S., and Harris, the manager of the bank where the cashing of the V.B.S. check was attempted, on December 11 and 14, 1987. While both Sowizral and Harris chose defendant's photos, neither could make a positive identification. Therefore, the police discontinued the investigation.

As to the items recovered at Silver and Gold Connection, the store manager, Carmen Adagio, told police that in early December 1987, a man came to the store several times over as many days, offering to sell gold chains, a ring and silver bars. Ultimately, Adagio bought three gold chains from him for $85. The presence of these items at the store was not ascertained until after Donald Garren discovered that his jewelry was missing on December 24, 1987. Garren, his son Thomas and Gerald Gance, a mutual friend of Thomas and defendant, went to the store. Gance had previously purchased jewelry items from defendant, who told him he had stolen them along with other pieces he had sold at Oakdale Mall. The Garrens reported the theft and the discovery of some of the stolen items to the police.

With this new information, the police reopened the investigation of the sale of the jewelry at V.B.S. On February 4, 1988, a corporeal lineup including defendant was individually viewed by Sowizral and Adagio, the merchants to whom the stolen items were sold, and by Harris and Almy, the bank personnel who had contact with the man who attempted to cash the V.B.S. check. Each selected defendant. He was subsequently indicted for grand larceny and criminal possession of

stolen property, and then moved to suppress the identification evidence.

At the suppression hearing, the police were unable to produce the actual photographs from the first array shown to Sowizral and Harris, which had been lost or misplaced, but did produce black and white photocopies. County Court permitted evidence to reconstruct that array. The court found that the December 11 and 14, 1987 arrays and the February 4, 1988 lineups were not unduly suggestive, and that all persons who viewed the lineup had an adequate independent source for their identifications of defendant. Accordingly, the court ruled that, at the trial, the witnesses could make an in-court identification and that evidence could also be introduced as to their identifications of defendant at the lineup (see, CPL 60.25, 60.30).

During the subsequent jury trial of defendant, Sowizral, Harris, Almy and Adagio testified to their identifications of defendant at the lineup, but only Almy and Adagio were able to identify defendant in court. Defendant was found guilty on all counts. This appeal followed.

Defendant's primary point on appeal attacks the validity of the February 4, 1988 lineup identification procedure. Defendant contends, first, that the lineup was tainted by the unduly suggestive photo arrays of December 11 and 14, 1987. It is argued that undue suggestiveness of the arrays was established by reason of the inability of the police at the suppression hearing to furnish the actual photographs used in the December 11 array and the fact that defendant's photograph was the only one included in both arrays, inevitably leading to the substantial likelihood of misidentification at the lineup. We disagree. First, County Court had an adequate evidentiary basis for reconstructing the first array and could also reasonably find from the evidence that the December 11 array was not suggestive. Thus, any inference of the invalidity of the December 11 array from the absence of the actual photographs used was overcome (cf., People v Johnson, 106 AD2d 469; People v Nelson, 79 AD2d 171, 174, cert denied sub nom. Usher v New York, 454 US 869). Second, while the sole inclusion of a single suspect's photograph in successive arrays is not a practice to be encouraged, it does not per se invalidate the identification procedures (People v Jones, 125 AD2d 333, 334-335; People v Malphurs, 111 AD2d 266, 268). Again, there was evidence upon which County Court could reasonably conclude that the photo identification procedures were not unduly suggestive. Notably, different photographs of defen-

dant were included in the two arrays, the one in the December 11 array being an older photograph supplied by another police department and that in the December 14 array resulting from a contemporaneous arrest of defendant on an unrelated matter. Moreover, defendant was the only person tentatively identified by anyone in both arrays (see, People v Malphurs, supra).

Finally, we agree with County Court that, to whatever extent the photo arrays may have involved impermissible identification procedures, they did not taint the lineup identifications. The lineup, photographs of which were included in the record on appeal and reviewed by us, was itself completely fair in including persons possessing reasonably similar physical characteristics as defendant (see, People v Stephens, 143 AD2d 692, 695). Harris and Sowizral had, from their personal dealings with defendant, a more than adequate basis for identifying defendant in the lineup independent of the arrays. Each of them had been given written instructions by the police, prior to viewing the lineup, designed to dissipate the effect of any identifications from the prior arrays. Under these circumstances, the seven-week hiatus between the last array and the lineup sufficiently attenuated any possible suggestive effect of the photographic identifications (see, People v Johnson, supra). Therefore, we uphold County Court's rulings on the identification evidence in every respect.

Likewise unpersuasive is defendant's contention that he was denied effective assistance of counsel at the trial. A review of the trial record as a whole reflects a trial strategy that was reasonable under the circumstances and vigorously and effectively pursued by defense counsel. The conduct of counsel complained of in hindsight on appeal was consistent with his trial strategy and does not establish ineffective assistance (see, People v Rivera, 71 NY2d 705, 708; People v Benn, 68 NY2d 941, 942). The remaining ground defendant advances for reversal, the failure to charge corroboration of accomplice testimony as to the witness Gerald Gance, was not preserved, and there is no reason to review it in the interest of justice. Gance's status as defendant's accomplice lacked evidentiary support and, again, would have been inconsistent with the theory of the defense.

Judgment affirmed. Kane, J. P., Casey, Mikoll, Yesawich, Jr., and Levine, JJ., concur.