■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DAVID GALLETTI, Respondent. [658 NYS2d 80] —Appeal by the People from an order of the Supreme Court, Kings County (Juviler, J.), dated March 8, 1996, which, after a *Wade* hearing, granted that branch of the defendant's omnibus motion which was to suppress identification evidence.

Ordered that the order is reversed, on the law, that branch of the defendant's omnibus motion which was to suppress identification evidence is denied, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent herewith.

Although ordinarily a hearing court's determination should be accorded great deference on appeal, it will be reversed where, as here, it is clearly unsupported by the record (cf., *People v Crandall*, 172 AD2d 618; *People v Diaz*, 170 AD2d 618; *People v Cartier*, 149 AD2d 524, *cert denied* 495 US 906; *see also, People v Hernandez*, 164 AD2d 920).

The Supreme Court erred in finding that the 1995 photographic array in this case was unduly suggestive because of trivial differences in the quantity of facial hair worn by the defendant as opposed to the fillers. All six of the men depicted in the photographs were young Hispanic males with abundant dark curly hair and bushy mustaches. Shadows below the

defendant's nether lip and chin suggest that he, too, sported the kind of light beard worn by four of the other five subjects in the photographic array *(see, e.g., People v Jackson,* 211 AD2d 644; *People v Lee,* 207 AD2d 953; *People v Hernandez, supra; People v Callace,* 143 AD2d 1027).

Considering the totality of the circumstances, we conclude that the 1995 photographic array was not "unduly suggestive" *(see, People v Valdez,* 204 AD2d 369; *People v Chalmers,* 163 AD2d 528; *People v Rodriguez,* 124 AD2d 611, 612), as there was no substantial likelihood that the defendant would be singled out for identification *(see, People v Chipp,* 75 NY2d 327, 336, *cert denied* 498 US 833). This determination is supported by the fact that one of the two eyewitnesses to the crime complained that the six men in the 1995 photographic array were too much alike in appearance to permit an identification—although that witness told police that three of the men (the defendant being one of this group) closely resembled the man that he had seen shoot and kill a woman on a Brooklyn street in 1976 *(see, People v Gonzalez,* 177 AD2d 961, 962). In addition, all of the evidence establishes that the 1995 identification procedures were conducted fairly with respect to each eyewitness.

Because the People failed to preserve an earlier photographic array, composed right after the murder took place in May 1976, it must be presumed that the 1976 array was unduly suggestive, and the People failed to rebut that presumption by competent evidence at the *Wade* hearing *(see, e.g., People v Wedgeworth,* 156 AD2d 529; *People v Bratton,* 133 AD2d 408, 410-411; *People v Scatliffe,* 117 AD2d 827). It does not follow, however, that the mere presence of the defendant's photograph in both the 1976 and 1995 arrays rendered the latter array per se impermissibly suggestive. Indeed, it has frequently been held that "[s]uccessive photo arrays are not per se impermissibly suggestive" *(People v Lee,* 207 AD2d 953, *supra; People v Cordilione,* 159 AD2d 864, 866; *People v Sutherland,* 157 AD2d 681; *People v Sheirod,* 124 AD2d 14, 18-19). Here, the second photographic identification procedure took place 19 years after the first. Thus, the second procedure was sufficiently attenuated in time to nullify any possible taint *(see, e.g., People v Mullen,* 143 AD2d 849; *People v Smith,* 140 AD2d 647; *People v Dubois,* 140 AD2d 619, 622). O'Brien, J. P., Goldstein, McGinity and Luciano, JJ., concur.