Breitel, J.
On defendant’s appeal from a conviction for robbery two issues have been raised requiring a new trial and a new preliminary identification hearing. The first relates to improper cross-examination of defendant by the prosecutor to elicit and then contradict on rebuttal by extrinsic proof matter excludable because obtained in violation of the rules laid down in Miranda v. Arizona (384 U. S. 436). The second relates to a suggestive lineup identification of defendant casting doubt upon the victim’s in-court identification.
On July 7, 1967 at 9:30 a.m., Mrs. Mattie Wright was asleep in her apartment. Awakened by a noise, she saw a man, whom she identified at trial as the defendant, enter through the window. When she screamed he jumped on the bed and “ grabbed my throat and mouth.” He said, “ Lady, all I want is your money”. Mrs. Wright’s dog started barking and the intruder released her to quiet the dog. She struck the dog and then tried to escape, but was thwarted by the man who “ grabbed me, slugged me to the floor kneed—knees in my chest” and stated: “Now, lady, I have to kill you. You’re making too much noise.” She then blacked out. When she regained consciousness, he dragged her back to the bed, took $20 from her pocketbook, and then left the apartment through the window.
The intruder was in the apartment from 30 to 45 minutes. Mrs. Wright testified that during this time he wore “black socks on his hands ”.
*415 Two days later, on July 9, at 9:30 p.m., Detective Dunscomb telephoned Mrs. Wright to come to the police station to look at photographs. She was given a box of approximately 60 or 70 photographs of parolees and known criminals to examine. During the ensuing 15 minutes Detective Dunscomb was ‘ ‘ doing something else ”. She then identified a New York City parolee photograph of defendant.
Detective Dunscomb arrested defendant and brought him to the police station at 2:30 a.m. on July 10. When searched, a pair of black socks were discovered in his pocket.
Mrs. Wright, who had earlier been told that the police “ might pick up somebody that night ”, was awakened by telephone and asked to come to the station house. On her arrival, at about 3:00 a.m., she went directly to the squad room where Detective Dunscomb told her he ‘ ‘ would bring out the man that she had picked out in the photograph.” Defendant alone was brought out and Mrs. Wright stated: “"That’s him. I’d know him anywhere.”
Prior to trial, defendant, inter alia, moved to suppress “ all evidence of identification.” At the hearing held on this motion, the burden of proof was improperly placed on defendant. Defendant, called as the first witness, testified concerning the showup, followed by Detective Dunscomb. At the eonclusrt* of the detective’s testimony, defendant’s attorney suggested an adjournment, but the prosecutor wished to call Mrs. Wright as a witness. The court observed that it was late and told the prosecutor to “ keep her for tomorrow morning.”
On the following day, the prosecutor did not call Mrs. Wright. When defendant requested her presence contending that ‘ ‘ to have an adequate, a complete hearing, we must have the testimony ” of Mrs. Wright, the court indicated it would allow her to be called by the defense. Defendant then moved to reopen and call Mrs. Wright. The court, however, sustained an objection and ruled that the defendant could only call her as a rebuttal witness. To this ruling the defendant objected stating “ I fail to see what questions I could ask her, under your ruling.” He did not call her as a witness.
In denying defendant’s motion to suppress the identification, the court stated: ‘ ‘ I think that the identification by this witness *416 of this defendant, aside from the picture, aside from any lineup, might be sufficient for the trial of this action.”
It was error for the court on. the identification suppression hearing to hold that the in-court identification would be “ sufficient ’ ’ without first requiring the prosecution to establish by “ clear and convincing evidence ’’that it was neither the product of, nor affected by, the improper pretrial showup (People v. Logan, 25 N Y 2d 184, 191; People v. Ballott, 20 N Y 2d 600, 606-607).
The showup, conducted three days after the commission of the crime and absent a showing of compelling circumstances, was “ so unnecessarily suggestive and conducive to an erroneous identification that it violated due process of law ” (People v. Logan, supra, at p. 191). True, the witness, Mrs. Wright, had selected defendant’s photograph previously. This selection was not shown to be impermissibly suggestive since she had almost 70 photographs to examine and was left alone during her examination. It should be observed, however, that the collection of almost 70 photographs had not been produced or made available for inspection, nor was its production requested, but only the picture identified. Overall, there was no substantial likelihood of an irreparable misidentification in the photograph selection process (Simmons v. United States, 390 U. S. 377, 384).
After selection of the photograph, however, she was informed that the police might pick up someone that evening. Early the next morning she was awakened and asked to come to the station house. On arrival, Mrs. Wright was told that she would see the man whose photograph she had earlier selected. Defendant was exhibited, alone, to Mrs. Wright. By this time her identification of defendant was, prima facie, rendered, without more, vulnerable to suggestion. Notably, the showup identification was not the result of assiduous police work requiring prompt identification on the scene, or shortly following the commission of the crime, police practice sanctioned in People v. Logan (supra).
Because the showup violated due process' there must be a preliminary inquiry, as indeed the identification hearing court recognized with respect to the out-of-court identifications, to determine the independent value, and, therefore, the admissibility of Mrs. Wright’s in-court identification. Unfortunately, *417 the preliminary hearing was not properly utilized, because of the misplacement of the burden of proof and the omission from the People’s case of Mrs. Wright’s testimony. The last omission made it impossible for the hearing court to determine whether an in-court identification would have independent value.
The failure of defendant to object to the in-court identification is hardly a waiver, since he had made an appropriate pretrial motion to suppress. This motion preserves the objection, since no purpose would be served by renewing it on the trial, in contrast to the situation with respect to motions to .suppress confessions for involuntariness, where an objection is necessary to preserve the issue of admissibility for the jury’s consideration. (People v. Cefaro, 23 N Y 2d 283, 285-288; see, also, People v. Matthews, 25 N Y 2d 870.) Moreover, the burden of proof, once it has been established that there is a suggestive showup, is not on the defendant, but rather it is the People who must establish by 1 ‘ clear and convincing evidence ’ ’ that the in-court identification has not been tainted (People v. Ballott, supra, at pp. 606-607).
Since it is determined that the showup was unfair because too suggestive and that a hearing is required to determine the disqualifying effect, if any, on the in-court identification, it is immaterial whether counsel should have been present at the pre-arraignment identification (see United States v. Wade, 388 U. S. 218, and Gilbert v. California, 388 U. S. 263).
The second issue involves a different kind of error requiring that there be a new trial. Most important, it does not involve the finding of the black socks on defendant or the evidence received as to the finding of the socks, since they were discovered on a .search incident to a lawful arrest. The error arises in receiving testimony as to what defendant .said in the station house about the socks.
The defense was alibi, namely, that at the time of the crime defendant was home in bed. Defendant took the stand and confined his short direct examination to a denial of guilt and the alibi There was no testimony concerning .his interrogation at the police station or the socks that were taken from him. On cross-examination, however, defendant was asked about and denied ownership of the socks or that the socks were in his pocket on his arrest. He further testified, still on cross-exami *418 nation, that when questioned following his arrest he had, in effect, denied ownership of the socks.
Detective Dunscomb was recalled by the People as a rebuttal witness. Over objection that there was no advance notice that statements by defendant would be offered ('Code Crim. Pro., § 813-f) and that there was no proof that defendant had been warned under the rules mandated in Miranda v. Arizona, (supra), he testified that the defendant had admitted having the socks and “ couldn’t give me a reason why he had them.” He also testified that the defendant did not deny possession of the socks.
Statements by a defendant, not admissible on the People’s direct case, are nevertheless admissible to impeach defendant’s credibility as a witness (People v. Kulis, 18 N Y 2d 318, 322-323). Such statements may be used, however, only when the defendant “ opens the door ” by testifying to the matter on his direct examination (People v. Harris, 25 N Y 2d 175, 177; People v. Miles, 23 N Y 2d 527, 542-545; see, also, People v. Wellington, 26 N Y 2d 891). When the otherwise inadmissible statements are used for impeachment purposes, advance notice pursuant to section 813-f of the Code of Criminal Procedure need not be given (People v. Harris, supra, at p. 177).
But, as noted above, defendant did not testify on direct examination to any of the events in the police station. He confined his testimony to a bare denial of guilt and his alibi. There was no testimony on his direct examination which permitted cross-examination as to the details of the station house events (cf. People v. Wellington, supra). Thus, it was error for the prosecutor on cross-examination to have ranged beyond the defendant’s direct examination “ in order to lay a foundation for the tainted evidence on rebuttal ” (People v. Miles, supra, at p. 543).
Moreover, the error in allowing the impeachment evidence cannot be considered to be harmless as it was in People v. Miles (supra), even assuming that inculpatory matters related to the ultimate issues are not absolutely precluded (see Tate v. United States, 283 F. 2d 377, 380). In the Miles ease the proof establishing defendant’s guilt was “ overwhelming ” and since the error was confined to an incidental part of the case, it was held to be harmless. Here, however, the improperly admitted statement, *419 although limited to impeachment, related to a crucial element of the case. It was intimately tied to the method of the commission of the crime and thus related to defendant’s identification — a critical issue.
Hence, for this reason, there must be a new trial.
Since there must be a new trial, it is observed that the errors alleged as to cross-examination of defendant about prior misconduct are non-existent. Cross-examination relating to acts underlying a youthful offender adjudication is permissible, so long as the fact of adjudication is not elicited (People v. Vidal, 26 N Y 2d 249). A witness may also be cross-examined concerning a criminal act, although he may never have been indicted or convicted for the act (People v. Sorge, 301 N. Y. 198, 201; 65 N. Y. Jur., Witnesses, § 76). Of course, a witness may not be asked whether he has been indicted (People v. Morrison, 194 N. Y. 175,, 178). But, in reason, the mere fact of indictment should not proscribe inquiry into the underlying criminal act (see Richardson, Evidence [9th ed.], § 518, p. 528; cf. People v. Sorge, supra).
Accordingly, the judgment of conviction should be reversed and a new trial ordered, to be preceded by a new preliminary identification hearing.