■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MILTON

BROWN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered March 22, 1976, convicting him of robbery in the second degree (two counts), upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. No contentions have been raised with regard to the sufficiency of the facts. Defendant and one Joe Stockdale allegedly stole a payroll at gunpoint from complainants Alex Lampert and Michael Shapiro on December 13, 1974. In addition, the robbers stole a gun from Shapiro on that day. On January 22, 1975 Stockdale was arrested and found to be in possession of Shapiro's gun. On February 17, 1975 both complainants picked Stockdale out of a lineup. Thereafter, on March 28, 1975, Shapiro approached a foot patrolman on the street, told him about the December robbery, and said that he had just seen one of the perpetrators enter a store. When defendant exited the store, Shapiro pointed him out and, according to the patrolman, referred to defendant by his name, Milton Brown. Defendant was arrested. Subsequently, on April 4, 1975, Lampert picked defendant out of a lineup. Shapiro was not present at that lineup, but according to the detective who had conducted the lineup, Lampert had been present in court with Shapiro when the lineup was ordered by the court. Detective Ryan testified at the *Wade* hearing that defendant had also been present in court when the lineup was ordered, and that Lampert saw defendant at that time. Ryan's testimony was never directly refuted at the *Wade* hearing; the only evidence to the contrary was Lampert's statement, in response to a question concerning whether he had previously seen photographs of defendant, that he first saw defendant at the lineup. During the summer of 1975 Lampert had gone to the District Attorney to express doubts about defendant's guilt. Lampert believed that defendant's face was similar to that of the man who had robbed him, but after having seen defendant on several occasions, Lampert believed defendant to be taller than the robber. These doubts were also expressed by Lampert at the *Wade* hearing and, as a result, any in-court identification by Lampert was suppressed. However, at the trial, the prosecutor was permitted to inquire as to Lampert's lineup identification of the defendant. Lampert testified, over objection, that on April 4, 1975 there *was* no doubt in his mind that he was looking at one of the perpetrators and that the defendant was the man he picked out of the lineup. Defendant was convicted of the robbery. His codefendant, Stockdale, was acquitted (possibly on the basis of alibi testimony to the effect that Stockdale had been working for a contractor on the day in question and had helped pull his employer from a trench that the employer had fallen into). It was error to permit Lampert to testify to any identification of the defendant. Once it has been established that there was a suggestive showup or lineup, the People have the burden of establishing, by clear and convincing evidence, that the identification has not been tainted *(People v Rahming,* 26 NY2d 411, 417). Here, Detective Ryan's testimony, that Lampert had seen defendant in court as the person accused by Shapiro, was sufficient to shift the burden of proof to the People. The People never convincingly refuted, or even sought to refute, Detective Ryan's testimony. Accordingly, it was fundamental error to permit Lampert to testify as to this tainted lineup identification. Furthermore, it was error to permit Lampert to testify that he was sure at the lineup that defendant was one of the perpetrators. "To allow a conviction on the basis of the witness' earlier state of mind seems improper, especially since he conceivably could have [and here apparently did] changed his mind in the interim and concluded that he was wrong on the earlier occasion * * * the only valid and salient testimony which he might give would be

that he is certain *now*—as he sits on the witness stand—that the man whom he saw in the [lineup] is the same man who robbed him" (Denzer, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 60.25, p 242; emphasis in original). Finally, we cannot say on the basis of this record, that there is no reasonable possibility that the errors might have contributed to defendant's conviction (see *People v Von Werne*, 41 NY2d 584, 588; *People v Crimmins*, 36 NY2d 230, 237). Martuscello, J. P., Rabin, Margett and O'Connor, JJ., concur.