■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY WISE, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered February 27, 1975 (the date on the clerk's extract is March 6, 1975), convicting him of murder, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. Appellant was convicted of felony murder; the underlying felony was robbery. A *Huntley* hearing was held prior to the trial, at which time the trial court sustained the admissibility of certain oral inculpatory statements made by the appellant to a Detective Grosso, but suppressed a conversation that appellant had with a Detective Martin. The essence of the latter remark, made without the requisite *Miranda* warnings, was that appellant had fired the gun accidentally since it had a "hair trigger". During the course of the trial, appellant took the stand on his own behalf and, on direct examination, confined his testimony to a denial of (1) his guilt, through his version of the events of the night in question and (2) his having made any oral statements to Detective Grosso, through his version of his interrogation by that detective. Absolutely no references were made to the remarks attributed to appellant by Detective Martin. In fact, the name "Detective Martin" appeared on direct examination only when appellant gave the names of the detectives who asked him to accompany them to the station house. Nevertheless, on cross-examination the prosecutor questioned appellant as to whether he had had any conversations with *Detective Martin* and whether he had told Detective Martin that he fired the gun because of the "hair trigger". Upon appellant's denial, the People, in rebuttal, called Detective Martin to the stand to testify that the appellant had indeed confessed to him. Upon this appeal, appellant argues that the cross-examination was improper and resulted, as a matter of constitutional law, in a denial of his right to a fair trial. We agree. It is well settled that "the shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances" (*Oregon v Hass,* 420 US 714, 722). Hence, a defendant will not be allowed to resort to perjurious testimony or contradictions in reliance on the prosecution's inability to challenge his credibility (*Harris v New York,* 401 US 222, 226; *Walder v United States,* 347 US 62, 65). Equally clear is the fact that the defendant must *affirmatively* perjure

himself or, minimally, either expressly or implicitly testify to some inconsistency or contradiction in his statement of facts or deny that he had previously uttered some admission (see *People v Rahming,* 26 NY2d 411, 418; *People v Miles,* 23 NY2d 527, 543). A defendant does not "open the door" to events not related to the crime itself merely by taking the stand, denying his guilt and then rendering his account of the events in question. If such were the state of the law, the exclusionary rule of *Miranda* would be viable only so long as a defendant failed to testify in his own behalf. Obviously, a further and more affirmative act of a defendant is contemplated before the stringent constitutional protections inherent in *Miranda* may be laid aside. In the case at bar, appellant confined his testimony on direct examination to the narrow range of his version of the facts surrounding the crime and his version of his encounter with Detective Grosso. It would have been proper therefore, to introduce *any* statement that appellant had made to Detective Grosso, even one previously suppressed. Here, the "hair trigger" admission had been addressed to Detective Martin, not Detective Grosso. But appellant's direct examination virtually excluded all reference to Detective Martin. The cross-examination of appellant concerning this latter encounter was clearly collateral to appellant's account of the events of the crime, inasmuch as the questioning referred, not to the crime itself, but rather to appellant's denial of having made an admission about the crime afterwards in the station house. The difference is legally significant. Furthermore, the prosecutor's calling of Detective Martin in rebuttal was improper under traditional rules of evidence "a cross-examiner cannot *contradict* a witness' answers concerning collateral matters by producing extrinsic evidence for the *sole purpose* of impeaching credibility" *(People v Schwartzman,* 24 NY2d 241, 245 [emphasis in original]). Clearly, under *Harris v New York* (401 US 222, *supra),* Martin's rebuttal testimony had to be restricted to evaluating appellant's credibility, and the trial court so charged. Hence, in testifying, appellant neither resorted to perjury nor to a prior inconsistent statement for which it can be said that "the door was opened." It follows logically that the introduction of the out-of-court "hair trigger" remark rendered the trial constitutionally defective. The dissenter posits essentially that our conception of when a defendant "opens the door" on direct examination for the purposes of introduction of *Harris* material is inaccurate. While initially recognizing that appellant "was entirely free to deny his guilt as to the material elements of the crime without 'opening the door' ", the dissenter concludes that, "like the defendant in *Walder (supra),* the defendant here crossed the boundary by weaving a tangled web of falsehoods to confuse the jury into believing another account of events." What the dissenter fails to appreciate is that in *Walder,* unlike the instant case, the defendant denied facts which by no stretch of the imagination were in dispute: Walder testified on his own behalf that he had "never sold any narcotics to anyone in [his] life", nor "had [he had] any narcotics in [his] possession", nor had he "ever handed or given any narcotics to anyone" *(Walder v United States,* 347 US 62, 63, *supra)* when, in fact, he had been apprehended in possession of heroin and two agents had testified to having had transactions with him. The *Walder* fact pattern thus presented the court with a defendant who had the temerity to utter, in the words of the dissenter herein, "an assertion undeniably false". Such is not the case here, however. Whether Wise actually made the admission about the "hair trigger" to Detective Martin is an issue of much vigorous dispute, the alleged remark having been made without the benefit of other witnesses and appellant, of course, having denied it at the trial. Accordingly, the dissen-

ter's reliance on *Walder (supra)* and *Harris (supra)* is misplaced. Owing to the nature of the confession and the dubious credibility of the alleged eyewitness to the shooting (a drug addict who was granted immunity for testifying before the Grand Jury), the introduction of this remark, an error of constitutional dimension, cannot be deemed to be "harmless beyond a reasonable doubt" (see *Chapman v California,* 386 US 18, 22-24). Nor can it be said that there exists "no reasonable possibility that the erroneously admitted evidence contributed to the conviction" (see *People v Almestica,* 42 NY2d 222, 226). A new trial is required. Damiani, Cohalan and Margett, JJ., concur; Latham, J. P., dissents and votes to affirm the judgment, with the following memorandum: The majority of this court predicates its reversal upon the erroneous admission of a prior inconsistent statement uttered by the defendant, which was introduced solely to impeach his credibility. I believe, on the contrary, that the admission of this inculpatory remark was not error; hence I would affirm the conviction. As far back as 1954, the Supreme Court of the United States, in *Walder v United States* (347 US 62), enunciated the principle that the constitutional protections inherent in the Fourth Amendment exclusionary rule of *Weeks v United States* (232 US 383) could not be turned to the defendant's "own advantage, and provide [the defendant] with a shield against contradiction of his untruths" (p 65). While recognizing that the defendant (p 65) "must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it", the court found that the defendant, in that case, had crossed the permissible boundary and attempted to convert the shield into a sword. The court declared (p 65) that "Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics", an assertion undeniably false. More recently, in *Harris v New York* (401 US 222), the Supreme Court extended the rule announced in *Walder* to cases where the constitutional violation had been one of Fifth Amendment rights as embodied in *Miranda v Arizona* (384 US 436). These protections, the court stated (p 225), could not "be construed to include the right to commit perjury * * * Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately". In the case at bar, the defendant made a material inculpatory remark to Detective Martin that he had accidentally fired the gun because it had a "hair trigger". Inasmuch as Martin had not given the defendant his requisite *Miranda* warnings, the trial court properly suppressed this remark. At the trial, however, the defendant voluntarily testified on his own behalf and, during the course of his testimony, denied having committed the murder and rendered his own account of the fatal events of January 27, 1973. While he was entirely free to deny his guilt as to the material elements of the crime without "opening the door", yet, like the defendant in *Walder (supra),* the defendant here crossed the boundary by weaving a tangled web of falsehoods to confuse the jury into believing another account of events. Surely, one does not need an adjudication of perjury before the defendant reaches the "affirmative" threshold of which the majority speaks. It should be readily apparent that the remark to Detective Martin about the "hair trigger" constituted a prior inconsistent statement in every sense of the word in relation to his complicated denial of guilt. The remark was clearly material, unequivocally referable to the events in question and not some trivial "collateral" point (cf. *People v Schwartzman,* 24 NY2d 241, 245). Accordingly, it is manifest that the defendant, in the course of his direct examination, had to "open the

door" to this previously suppressed material. While the point at which a defendant opens the door to the use of statements which had been previously suppressed lies in a difficult to discern nether world, I believe the proper rule was expressed in *People v Johnson* (27 NY2d 119), where the court observed that (p 123): "This direct testimony of facts immediately concerned with the crime, negating criminal purpose, left it open to the People to test credibility by the inconsistencies in his statement. His direct testimony certainly developed affirmatively the version of defendant, within the language of *Miles* [23 NY2d 527]. The statement made by defendant to the police, to the extent used on cross-examination, and not otherwise before the jury, was that he had gone to the premises to commit a burglary, to 'get' a safe and that he waited outside as a lookout while his companions 'got in' to the building; that all three were 'looking for the safe' when they were interrupted by the police. These statements are plainly inconsistent with defendant's version of events offered on his direct testimony and they had a bearing on his credibility. *A defendant testifying in his own case to facts indicating his innocence cannot by omissions in his testimony limit questions addressed to credibility in cross-examination to admissions related to those precise facts. Such cross-examination may be addressed to admissions reasonably to be regarded as inconsistent with the direct testimony."* (Emphasis supplied.) There is no question that the trial court clearly instructed the jurors that they were to restrict their consideration of the "hair trigger" remark solely to evaluating defendant's credibility, and that they were not to consider it for its truth (cf. *People v Campbell*, 59 AD2d 912). Under these circumstances, the question was properly put to defendant on cross-examination and, upon his denial of having uttered it, the People properly called Detective Martin in rebuttal. I am compelled to note that this is but another example of the trend of appellate courts to construe evidentiary rules in such a hypertechnical and narrow sense as to do genuine violence to the ability of a trial court to function in its truth-determining role. I would affirm the judgment.