This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------

No. 195
The People &c.,
          Respondent,
     v.
Kaity Marshall,
          Appellant.


          Richard Joselson, for appellant.
          Camille O'Hara Gillespie, for respondent.
          Innocence Project, Inc., amicus curiae.


RIVERA, J.:

     Defendant claims that the trial court, relying on People v

Herner (85 NY2d 877 [1995]), and affirmed by the Appellate Term,

improperly denied her request for a Wade hearing to determine the

suggestiveness of a prosecutor's pre-trial display to complainant

of defendant's arrest photograph, on the ground that the display

- 1 -

was trial preparation, and not an identification procedure.
Defendant further argues that we should repudiate a practice that
has developed post-Herner, into an exception to Criminal
Procedure Law § 710.30.

Upon consideration of the applicable statutory mandates and
caselaw, as well as the concerns over mistaken identification and
the potential risk of wrongful convictions based on eyewitness
error, we conclude that the trial-preparation exception and the
procedural mechanism designed to determine its application to any
particular case, the so-called Herner hearing, serves as an
obstacle to judicial scrutiny of potentially unconstitutionally
suggestive identification procedures.  The Herner procedure is,
furthermore, unnecessary, because a Wade hearing adequately
ensures against the admission of an unreliable identification.

We further conclude that the trial court here improperly
denied defendant's requests for a Wade hearing, but such error
was harmless as there is record support for the trial court's
alternative finding of an independent source for complainant's
in-court identification of defendant.  Therefore, Appellate Term
should be affirmed.


I.

The People charged defendant Kaity Marshall with several
offenses arising from an assault of a passenger on a New York
City bus.  Initially, the police were unable to locate a suspect,

despite descriptions of the assailant from the complainant and the bus driver.  Then, two months after the incident, complainant was at a hospital pharmacy when, by mere happenstance, she saw defendant and recognized her.  Complainant immediately called the police, and identified defendant as the assailant.  Defendant was arrested at the hospital and later charged with Assault in the Third Degree (Penal Law § 120.00 [1]), Criminal Possession of a Weapon in the Fourth Degree (Penal Law § 265.01 [2]), Menacing in the Second Degree and Third Degree (Penal Law §§ 120.14, 120.15), and Harassment in the Second Degree (Penal Law § 240.26 [1]).

Eighteen months after the bus incident, and the day before a scheduled court appearance on defendant's criminal case, the prosecutor met with complainant and showed her a photograph of defendant taken on the day of her arrest.  In court the following day, the prosecutor informed the judge and defense counsel that as part of trial preparation he had shown complainant the photograph in order to aid him in understanding her description of defendant's hairstyles on the day of the attack and when she was arrested.

As part of defendant's omnibus motion, and in response to the prosecutor's disclosure, defense counsel requested a hearing pursuant to Herner (85 NY2d at 879), to establish that the photograph display constituted an identification procedure under CPL 710.30, necessitating a Wade hearing to determine whether the display was unduly suggestive.  In support of the motion, counsel

argued that the photograph display likely tainted complainant's anticipated in-court identification, "thus transforming [complainant's] initial identification into one that is now certain based on a suggestive identification procedure," which therefore required preclusion of the identification made at the hospital.  Counsel also requested to call as a witness the Assistant District Attorney (ADA) who displayed the photograph to complainant.

The court granted the hearing but denied the request to call the ADA.  Instead, the sole witness at the hearing was complainant, who testified not only about the meeting with the ADA, but also about the attack, the assailant's appearance and her identification of defendant at the hospital.  In recounting the incident, complainant asserted that she took a good look at the assailant so that she would recognize her if she ever saw her again.  She described the assailant as a black woman, between 20 and 40 years of age, who, as compared to herself, had a straighter face, a slightly larger nose and a much darker complexion.  Complainant further testified that the next time she saw the assailant was by chance, at a hospital, two months after the incident.  She stated that she had no doubt that this woman was the same person who had attacked her on the bus.

In response to questions about her meeting with the ADA, complainant testified that he showed her a photograph and asked her if she knew the picture, that the photograph was blurry and

that she had only glanced at it.  She also stated that the photograph did not change her mind about her memory of the attacker.  The People did not submit the photograph into evidence.  On cross-examination, complainant stated that she had not seen a photograph of the woman who was arrested, had not previously seen the photograph shown to her at the meeting with the ADA, and that she did not remember the ADA asking about defendant's hairstyle, or for a description of the assailant.

In her post-hearing submission, defense counsel again argued that the photograph display was a suggestive identification procedure that should be tested further in a Wade hearing, and that defendant should be permitted to call as a witness the ADA who interviewed complainant.  The People responded that the display was trial preparation, and, regardless, they did not intend to offer the photograph into evidence because complainant's pre-arrest hospital identification of defendant served as an untainted basis for an in-court identification.

The court rejected defendant's arguments and determined that the photograph display was part of trial preparation.  The court also concluded that, given complainant's prior identification of defendant at the hospital, her "brief viewing of the blurry photograph [would] not taint an in-court identification of Defendant."

## II.

At defendant's nonjury trial, the People relied heavily on

eyewitness testimony from complainant and the bus driver.
Complainant repeated much of the testimony from the pre-trial
hearing.  She again recounted that one afternoon she was seated
riding a city bus in Brooklyn with her daughter when another
female passenger, whom complainant had never seen before, stood
in front of her to look out the window and stepped on her foot.
After the woman sat down, complainant remarked to her that she
had failed to apologize.  The woman then stood up and punched
complainant repeatedly in the face, nose and head, giving
complainant a bloody nose and injuring her left eye.  During the
physical altercation, complainant attempted to defend herself,
but the woman pulled out a knife and threatened to kill her.
Several passengers were screaming, causing the bus driver to look
in the rearview mirror where he saw the woman, who was unknown to
him, and complainant, whom he recognized as a previous passenger.
He again briefly saw the assailant, now wearing sunglasses, as
she exited the bus when it reached the next stop.

Complainant made an in-court identification of defendant as
her assailant.  Complainant also testified as to her out-of-
court, spontaneous identification of defendant at the hospital.
Complainant made no reference to any other pre-trial
identification and did not testify about the photograph display.
The People did not submit the photograph into evidence.

The People's other eyewitness was the bus driver, who made
an in-court identification of defendant as the woman he observed

punch complainant in the face.  He testified that during the altercation he took a good look at defendant's face, and described for the court the attacker's race, approximate age, weight and clothing.

Defendant testified that she was with her mother at a laundromat at the time of the attack.  She submitted into evidence her cellular telephone records, which showed that calls were made and text messages were sent from her phone at the approximate time of the incident.  The records indicated that two of these text messages were sent to her mother's phone number, which defendant claimed were unintentional.  Defendant further testified that on the day of her arrest she heard complainant tell the officers that she was not sure defendant was the attacker, and asked to call her daughter to verify, and that later, at the precinct, defendant saw complainant with a younger woman, who she overheard say "Mom, that's not her."

Defendant's mother also testified, and corroborated that her daughter was with her at a laundromat and that defendant was texting on her phone at the time of the incident.  On cross-examination, defendant's mother admitted that she had not previously informed defense counsel, the prosecutor or the police that defendant was with her on the day of the attack.

On rebuttal, the People presented testimony from the two arresting officers who stated that complainant told them she was one hundred percent sure defendant was the attacker and that she

never wavered.

The court found defendant guilty of attempted assault in the third degree (Penal Law §§ 110,00, 120.00 [1]), attempted criminal possession of a weapon in the fourth degree (Penal Law §§ 110.00, 265.01 [2]), menacing in the third degree (Penal Law § 120.15), and harassment in the second degree (Penal Law § 240.26 [1]).  The Appellate Term affirmed, concluding as relevant here, that the pre-trial photograph display was permissible trial preparation and, since complainant identified defendant upon her arrest, the display did not taint complainant's in-court identification.  The court also rejected defendant's claim that the ADA should have been called at the hearing (42 Misc 3d 141[A] [App Term, 2d, 11th, & 13th Jud Dists 2014]).  A Judge of this Court granted defendant leave to appeal (23 NY3d 1039 [2014]).  We now affirm.


                              III.

Wrongful convictions based on mistaken eyewitness identifications pose a serious danger to defendants and the integrity of our justice system (United States v Wade, 388 US 218, 228 [1967] ["The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification"]; People v Santiago, 17 NY3d 661, 669 [2011] ["mistaken eyewitness identifications play a significant role in many wrongful convictions"]; People v Riley, 70 NY2d 523,

531 [1987] ["The complex psychological interplay and dependency
of erroneously induced identification . . . must be vigilantly
guarded against because [it] drives right into the heart of the
adjudicative guilt or innocence process affecting the person
accused and identified"]; People v Caserta, 19 NY2d 18, 21 [1966]
["One of the most stubborn problems in the administration of the
criminal law is to establish identity by the testimony of
witnesses to whom an accused was previously unknown, from quick
observation under stress or when . . . there was no particular
reason to note the person's identity"]).

Apart from the uncertainty of human memory, suggestive
identification procedures "increase the dangers inhering in
eyewitness identification" (Wade, 388 US at 229).  A pre-trial
identification procedure that unduly suggests a defendant's guilt
of the charged offense increases the risk of misidentification by
improperly influencing the witness.  As the Supreme Court has
recognized,

> "[p]ersons who conduct the identification
> procedure may suggest, intentionally or
> unintentionally, that they expect the witness
> to identify the accused. Such a suggestion,
> coming from a police officer or prosecutor,
> can lead a witness to make a mistaken
> identification. The witness then will be
> predisposed to adhere to this identification
> in subsequent testimony at trial"

(Moore v Illinois, 434 US 220, 224-225 [1977]). Furthermore, even
employing "the most correct photographic identification
procedures," displays conducted by the police contain "some
danger that the witness may make an incorrect identification"

(Simmons v United States, 390 US 377, 383 [1968]).  "Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in . . . memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification" (id. at 383-384).  It is inescapable that "[a] major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification" (Wade, 388 US at 228).

The unfairness to the defendant and the unreliability of such procedures adversely impact the truth-finding process.  Therefore, a pre-trial identification procedure that is unduly suggestive violates a defendant's due process rights and is "not admissible to determine the guilt or innocense of an accused" (People v Chipp, 75 NY2d 327, 335 [1990] [citing Wade, 388 US 218; People v Blake, 35 NY2d 331 [1974]; Riley, 70 NY2d 523; People v Adams, 53 NY2d 241 [1981]).

A defendant may generally challenge suggestive procedures pursuant to CPL 710, which New York's Legislature enacted in "response to the problem of suggestive and misleading pretrial identification procedures" (People v Gissendanner, 48 NY2d 543, 552 [1979]), and in "recognition of the importance of testing the reliability of identification testimony before trial" (People v

Rodriguez, 79 NY2d 445, 449 [1992]). This Court has explained that "the statutory scheme ensures that the identifications are not the product of undue suggestiveness, and lessens the possibility of misidentification" (People v Boyer, 6 NY3d 427, 431 [2006], citing Rodriguez, 79 NY2d at 449; People v Newball, 76 NY2d 587, 590-591 [1990]). As the Court stated in Boyer, "[t]he statutory mandate is plain and the procedure simple: the People serve notice, defendant moves to suppress and the court holds a Wade hearing to consider the suppression motion" (6 NY3d at 431). Although a court may summarily deny a request to suppress evidence where the defendant fails to allege a legal basis for the motion (CPL 710.60 [3]), "so long as the motion alleges undue suggestiveness, the defendant is generally entitled to a Wade hearing" (Boyer, 6 NY3d at 431).

Furthermore, if "the pretrial identification procedure is shown to be impermissible and improper, any in-court identifications, though not per se excludable, are not to be received in evidence 'without first determining that they were not tainted by the illegal [procedure] but were of independent origin'" (People v Ballott, 20 NY2d 600, 606 [1967] [quoting Gilbert v California, 388 US 263, 272 [1967]; see also, People v Logan, 25 NY2d 184 [1969]; People v Rahming, 26 NY2d 411, 416 [1970]). In other words, an in-court identification is admissible only if the People establish by clear and convincing evidence that it "was neither the product of, nor affected by,

the improper pretrial" procedure (Rahming, 26 NY2d at 416, citing Logan, 25 NY2d at 191; Ballott, 20 NY2d at 606-607).

Here, rather than focus the hearing directly on whether the photograph display was unduly suggestive, the court proceeded to consider whether, as the People argued, the display was trial preparation and thus fell outside the ambit of CPL 710.30, or, as the defendant maintained, the display constituted an identification procedure and thus a proper subject of a Wade hearing. The court, defendant and the People interpreted this Court's memorandum decision in Herner as approving what is essentially a pre-Wade hearing designed to assess the need for a judicial determination on suggestiveness.

In Herner (85 NY2d at 878), during the course of preparing the identifying witness to testify at trial, the prosecutor showed her a picture of the lineup at which she had identified the defendant. The prosecutor asked if she remembered the lineup, and the witness answered affirmatively (id.). The witness was also shown the picture a second time the morning before she testified (id.). This Court agreed with the courts below that the pre-trial display of the photograph was trial preparation and not an identification procedure subject to the notification requirement of CPL 710.30. Lower courts have construed Herner as establishing a so-called trial preparation exception to a Wade hearing (see, e.g., People v Bulgin, 29 Misc 3d 286, 304 [Sup Ct, Bronx County 2010] [identification of

defendant in photograph arrays approximately sixteen months after the showup and original photograph identification was trial preparation]; People v Jackson, 43 AD3d 488, 489 [3d Dept 2007] [review of tape recordings of meetings between a confidential informant and the defendant just before the confidential informant's testimony at trial were trial preparation and not identification procedures and therefore did not require notice under CPL 710.30]; People v Hopkins, 284 AD2d 223, 223 [1st Dept 2001] [witness' viewing of arrest photographs of defendant and codefendant prior to the witness' testimony to review the roles of each in the robbery was trial preparation and not an identification procedure and therefore the Wade hearing was unnecessary]; People v Jerold, 278 AD2d 804, 804 [4th Dept 2000] [as the witness had already identified the defendant, her viewing, before testifying, of a photograph array and another photograph of the defendant was trial preparation and did not taint her subsequent in-court identification of the defendant]; People v Randolph, 232 AD2d 327, 327 [1st Dept 1996] [witness' viewing after a hearing of photographs of the defendant and two other people arrested in connection with this case, in order to help the witness, who was not fluent in English, to explain the roles of each person in the robbery was not an identification procedure, and therefore was not subject to the requirements of CPL 710.30]).

Defendant claims that the trial preparation exception

recognized in Herner is inconsistent with New York's approach to suggestive pre-trial identifications.  We agree.  By employing this truncated hearing protocol, the court failed to reach the essential question whether the photograph display was unduly suggestive, and, if so, whether it tainted complainant's identification of defendant.  When a defendant challenges the suggestiveness of an out-of-court viewing of defendant's likeness, the central issue presented for judicial consideration is whether the pre-trial display is conducted under circumstances bearing the earmarks of improper influence and unreliability, which create the risk of mistaken identification and thus infect the truth-seeking process.

The concern that a pre-trial identification will result in witness error is the same regardless of the People's motive. Whether the procedure is intended to refresh or anchor the identification of defendant in the witness' memory before trial, or intended to assist the ADA in preparing the case, the relevant inquiry remains the same: was the observation of defendant unduly suggestive, rendering the subsequent identification unreliable.

Indeed, this Court has previously recognized that showing one photograph of a defendant - the procedure at issue in defendant's case - carries the risk of undue suggestiveness and entitles defendant to a Wade hearing (Rodriguez, 79 NY2d at 453 ["Defendant was presumptively entitled to the Wade hearing on alleging that the police display of a single photo to [the

identifying witness] was suggestive"]; Matter of James H., 34
NY2d 814, 816 [1974] ["The danger is increased when a single
photograph is exhibited which tends to emphasize the person
portrayed as the person sought"]).  We can find no basis to
maintain a distinction between viewings of a defendant's image in
preparation for trial and any other out-of-court identifications.
Both expose a witness to defendant's likeness, with the potential
risk for undue suggestiveness.

We therefore see no reason to encumber our courts with an
additional pre-Wade hearing. Instead, upon defendant's motion, a
court must hold a formal pre-trial hearing to determine whether
the police or prosecutor conducted an out-of-court identification
procedure that exposed the witness to defendant's identity in an
unduly suggestive manner (Boyer, 6 NY3d at 431).  The People bear
the initial burden to establish a lack of any undue
suggestiveness, but the defendant "bears the ultimate burden of
proving that the procedure was unduly suggestive" (Chipp, 75 NY2d
at 335).  If the court finds no undue suggestiveness, the motion
is denied and the People may admit the identification at trial.
If the court finds the procedure to have been unduly suggestive,
and the People have failed to establish by clear and convincing
evidence the existence of an independent source for the
identification, the motion is granted (Rahming, 26 NY2d at 417).
In that case, the pre-trial identification is suppressed and an
in-court identification tainted by the prior identification

procedure precluded (Chipp, 75 NY2d at 335). We recognize that
absent a showing of suggestiveness the People bear no burden to
come forward with evidence of an independent source (id.).
However, we repeat our previous observation that to avoid
unnecessary additional proceedings, the hearing should fully
address whether there is some basis for inclusion at trial of the
challenged identification (see People v Wilson, 5 NY3d 778, 780
[2005] ["in light of the 'risk for completely renewed
proceedings' whenever a pretrial identification is challenged,
the People are generally well-advised to come forward with any
independent source evidence at a Wade hearing so that the
suppression court may, where appropriate, rule in the
alternative"] [quoting People v Burts, 78 NY2d 20, 25 [1991]]).

Here, the People maintain defendant is not entitled to a
Wade hearing because the ADA showed defendant's arrest photograph
to complainant in order for complainant to explain defendant's
appearance on the separate occasions of the attack and her
arrest, and not for purposes of an identification.[1] However,

---

[1]The People alternatively argue that no Wade hearing is
required because complainant failed to identify defendant during
the display of the photograph, as in the case of People v Trammel
(84 NY2d 584 [1994]). However, because complainant's lack of
identification is disputed, and the record is subject to
conflicting interpretations on this question, we find Trammel
inapplicable under the unique circumstances of this case. Here,
because the People failed to introduce the photograph at the
hearing, and the complainant's testimony was unclear and appeared
to contradict the ADA's description of the meeting, defendant was
entitled to explore the circumstances of complainant's viewing of
the photograph. Thus, while a hearing is generally unnecessary

complainant had to determine whether the person in the picture was the person she remembered as the assailant.  Defendant correctly argues she was entitled to a Wade hearing to determine if the display was unduly suggestive, and, therefore, tainted an in-court identification.[2]

However, on the facts of this case, this error was harmless. As is clear under the law, the People are entitled to establish that there is an independent source for an in-court identification (Wade, 388 US at 241; Chipp, 75 NY2d at 335;

---

where the record reveals no substantial basis to dispute the lack of a pretrial identification, here such a substantial basis exists, removing this case from Trammel's ambit.  Moreover, if as the People contend, complainant failed to recognize the person in the picture as the assailant, defendant may have been entitled to this material under Brady v Maryland (373 US 83, 87 [1963] ["suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"]).

The People also claim that the court was not required to determine the suggestiveness of the photograph display because the People did not intend to, and, in fact, did not, introduce the photograph as part of the prosecution's case-in-chief.  While true, this does not alter our analysis because the complainant made an in-court identification during the prosecutor's direct examination, and our caselaw is clear that before an in-court identification may be admitted the People must establish that it was not tainted by a suggestive and improper prior identification procedure (see Rahming, 26 NY2d at 416).  Thus, at a minimum, defendant was entitled to a Wade hearing on the suggestiveness of the photograph display as it pertains to complainant's in-court identification of defendant as the assailant.

[2]Defendant did not challenge the bus driver's in-court identification, therefore we have no occasion on this appeal to consider any potential suggestiveness and admissibility of first-time, in-court identifications, as urged by Amicus.

Adams, 53 NY2d at 248). Here, the trial court relied on

complainant's identification of defendant at the hospital for its

finding that there was no substantial likelihood that complainant

misidentified defendant and thus concluded that the photo did not

taint the in-court identification of defendant. In essence, the

court found an independent source and the Appellate Term

affirmed.[3] Such determination resolved an issue of fact and

therefore is beyond our review if supported by the record, unless

the determination is erroneous as a matter of law (People v

Young, 7 NY3d 40, 44 [2006], citing People v Malloy, 55 NY2d 296,

300 [1982]; People v Dickerson, 50 NY2d 937, 938 [1980]).

On the record before us we cannot say there is no support

for the court's finding. The complainant testified at the

hearing that she saw defendant at the hospital by chance and

recognized her as the assailant. She then called the police,

and, when they arrived, she pointed out defendant as the woman

who previously attacked her on the bus. She further testified

that viewing the photograph did not effect her memory of the

assailant. This was sufficient to establish an independent

_____

[3]The dissent argues that there was no independent source
finding because the trial court's reference to the blurry photo
was merely "an effort to lend support to its conclusion that the
display did not qualify as an identification procedure at all"
(dissenting op, at 3 n1). This selective reading of the opinion
is contradicted by the trial court's conclusion that the hospital
viewing and the photo display would not taint an in-court
identification.

source for the complainant's in-court identification.[4]

Nevertheless, defendant claims that she did not have an opportunity to address the independent source issue because the court, the People and defense counsel understood the hearing to be limited to the trial preparation/identification procedure question. While there is some support in the hearing transcripts for defendant's argument that the hearing was circumscribed, the record also establishes that defense counsel did, in fact, cross-examine complainant about the hospital identification. She asked complainant why she was at the hospital pharmacy, how much time passed before she recognized defendant, how she came to notice the defendant, what the defendant was wearing and doing when complainant saw her, and the circumstances leading to complainant calling the police. Such questions were wholly unnecessary if, as defendant contends, she understood the hearing to focus solely on the suggestiveness of the photograph display.

---

[4]Our opinion in no way retreats from our recognition in People v Santiago (17 NY3d 661, 670 [2011]) and People v LeGrand (8 NY3d 449, 458 [2007]) that post-event information affects the accuracy of subsequent identifications. However, we disagree with the dissent's apparent assertion that on the strength of the statements in those prior cases defendant is entitled to another hearing (dissenting op at 6). Nor did defendant fully develop below, and thus preserve for our consideration, her argument that an independent source identification may be subject to the same dangers of eyewitness misidentification as those associated with law-enforcement orchestrated pre-trial identifications procedures. Therefore, we provide no opinion on whether the developing data and caselaw on memory and eyewitness identification puts in question the continuing viability of independent source identifications.

Furthermore, defendant cannot argue that she was unaware of the proposed alternative ground for the in-court identification, or, as the dissent suggests that the People limited their argument to whether the display was trial preparation or an identification procedure.  The People consistently took the position in their opposition papers to defendant's request for a hearing and in their post-hearing memorandum that the prior hospital identification was an independent source.  Indeed, in anticipation of the People's argument on this ground, defendant asserted in her post-hearing submission that whether prior viewings of defendant provided the basis for an independent in-court identification should be resolved in a <u>Wade</u> hearing or in an independent source hearing.  Moreover, defendant's request for another hearing, even though record evidence of an independent source exists, encourages the unnecessary expenditure of judicial resources and is at odds with the procedure sanctioned in <u>People v Burts</u> (78 NY2d at 24-25) and <u>People v Wilson</u> (5 NY3d at 780). In those cases, this Court recommended that the People present evidence of the independent source at the pre-trial hearing, so as to avoid the need for renewed hearings should the trial court's non-suggestiveness determination be reversed on appeal.

Given our decision we have no occasion to address defendant's claim that the court erred in denying her request to call the ADA as a witness at the hearing.

Accordingly, the order of the Appellate Term, should be

affirmed.

People v Kaity Marshall

No. 195

LIPPMAN, Chief Judge (dissenting):

Although I agree with the majority that the Herner
dichotomy, between trial preparation on the one hand and
identification procedures on the other (see People v Herner, 85
NY2d 877, 879 [1995]), is not conceptually valid and should not
be used to shield from Wade scrutiny pretrial prosecutorial photo
displays to an identifying witness, I cannot agree that defendant
was afforded the Wade hearing to which she was decidedly
entitled, much less that the People at the hearing held met their
initial Wade burden to demonstrate the nonsuggestiveness of the
subject photo display.  Nor do I find it possible to conclude
that the presumption of suggestiveness arising from the
prosecutor's display of a single arrest photograph of defendant
to the complainant, was otherwise overcome by what the majority
retrospectively dubs "independent source" evidence.

It is, first of all, plain that defendant was never
afforded a full Wade hearing and that this was by design, since
the announced purpose of the so-called "Herner" hearing was to
determine whether a Wade hearing would be needed; indeed, the
premise upon which the Herner proceeding was conducted was that
if the photo display lent itself to description as "trial

- 1 -

preparation," no <u>Wade</u> hearing would be necessary.  And, while

there was some inquiry at the hearing as to the circumstances

attending the complainant's observation of her assailant and her

two-month removed identification of defendant in a hospital

waiting area, the scope of that inquiry was curtailed in

accordance with what the court and the parties understood to be

the narrow focus of the hearing.  This shared understanding was

expressly confirmed at the hearing's conclusion:

> "THE COURT: What is the issue?
>
> "[PROSECUTOR]: <u>The issue is if it [was]</u>
> <u>permissible trial prep or an identification</u>
> <u>procedure</u>. If it was an identification
> procedure under the Penal Law then it was --
>
> "THE COURT: Then it is a Wade hearing.
>
> "[PROSECUTOR]: Right. <u>We are not at the point</u>
> <u>--</u>
>
> "THE COURT: But as the first step both agree
> if it is ID procedure.
>
> "[DEFENSE COUNSEL]: <u>That is our position as</u>
> <u>well, if this hearing is for the sole purpose</u>
> <u>of determining whether or not if the</u>
> <u>identification procedure, our [sic] trial</u>
> <u>preparation, if it is deemed to be ID</u>
> <u>procedure then this gets sent to the Wade</u>
> <u>hearing.</u>
>
> "[PROSECUTOR]: "<u>Yes</u>.
>
> "THE COURT: All right and I will need you
> both parties to clarify what your positions
> are on what fact[s] the Court should
> determine or consider <u>in determining whether</u>
> <u>it is an ID procedure</u>" (emphasis added).

Consistent with this understanding, defendant's attorney in her

posthearing submission reiterated "<u>[t]he Herner hearing is for</u>

the sole purpose of determining whether the state action

constituted an ID process" (emphasis in original), and the

prosecutor argued not that there was an independent source for an

in-court identification, but rather that because the photo

display did not result in an identification -- the image having

according to the complainant been too "blurry" for that purpose -

- there had been no identification procedure that could have

affected the basis for plaintiff's prospective, i.e. in-court,

identification.  This argument did not invite a finding that

there was an independent source for complainant's in-court

identification, i.e., one sufficient to overcome an intervening

suggestive identification procedure, only that there had not been

anything that could qualify as an intervening identification

procedure.

        The issue of independent source then, never having been

actually litigated in the context of what was by record agreement

a hearing limited to the question of whether or not there had

been an identification procedure, there is no preserved argument

as to independent source before us, much less anything that could

qualify as a competent finding of independent source to support

the majority's harmless error gloss.[1]  Indeed, even if this Court

---

[1]Contrary to the majority's characterization, the motion
court did not purport to base its decision of the motion on a
finding of independent source.  The motion court quite plainly
found that the display of the photo was shielded from Wade
scrutiny under what it understood to be the Herner trial
preparation doctrine.  Its observation that the display of the

were empowered to make a de novo independent source finding, which it is not, there is no record to support one.

Had there been a Wade hearing as there should have, since, as the majority correctly notes, there is "no basis to maintain a distinction between viewings of a defendant's image in preparation for trial and any other out-of-court identifications [since] [b]oth expose a witness to defendant's likeness, with the potential risk for undue suggestiveness" (majority opinion at 15), the prosecution would have had the burden of going forward to demonstrate that the photo display was not unduly suggestive (see People v Chipp, 75 NY2d 327, 335 [1990], cert denied 498 US 833 [1990]).  And, where a display of photographs is concerned, that burden cannot be met without either the production of the photograph[s] or testimony detailing the procedures employed to guard against undue suggestiveness (see People v Holley, __ NY3d __, slip decision at 8-9 [decided herewith]).  Here, the arrest photograph shown complainant was never produced and the only proof that its display was nonsuggestive was the complainant's testimony that the image was too blurred to recognize.  Of course, in the absence of the photo or testimony by the prosecutor who displayed it to complainant, there was no

assertedly unrecognizably "blurry" photo would not taint complainant's in-court identification, viewed in context was simply an effort to lend additional support to its conclusion that the display did not qualify as an identification procedure at all, a conclusion that this Court is now unanimous in rejecting.

way to judge, or for defendant to challenge the truth of complainant's facially improbable claim that the arrest photograph, evidently created for the purpose of identifying defendant while she was in custody and purportedly shown her to enable her verification of defendant's hairstyle at the time of her arrest, was in fact of such poor quality as to be useless for those purposes.  This proof, such as it was, was altogether inadequate to meet the burden that would have been the People's had this been a Wade proceeding, to show that the pretrial display by the prosecutor of a single arrest photograph of the defendant to the complaining witness some 16 months subsequent to that arrest and 18 months after the incident upon which the arrest identification was premised, was not unduly suggestive. Since the People manifestly did not meet their initial Wade burden, they would as a condition of having complainant identify defendant in court have been required to demonstrate, by clear and convincing evidence, that there was an independent basis for complainant's in-court identification (see Chipp, 75 NY2d at 335).  But, plainly, without any means of judging the potency of the intervening presumably suggestive photo display, any conclusion that complainant's temporally distant observations of her assailant would independently inform her in-court identification could have been based on no more than supposition.

We have recognized the principle, generally accepted

among social scientists and cognitive psychologists,[2] that postevent information affects identification accuracy (see People v Santiago, 17 NY3d 661, 670 [2011]; People v LeGrand, 8 NY3d 449, 458 [2007]).  It is not consistent with that recognition to simply assume that a display as potentially suggestive as the prosecutor's was to complainant could have had no distorting effect on her remotely formed memory of her assailant and her trial account of the bus altercation.  Certainly, there is not clear and convincing evidence to support that conclusion.  In this connection, it should be noted that complainant never identified her assailant out of a pretrial lineup or photo array, much less out of one nonsuggestively composed.  Her memory of her assailant, then, was never objectively tested or fixed during the long interval between the incident and defendant's trial, and, as related in her trial testimony, was thus to an unascertainable degree an amalgam of layers of recollection increasingly malleable and susceptible to suggestion with the passage of time. Whether, under these circumstances, the display of the photograph raised a substantial likelihood of irreparable misidentification, was, in accordance with the requisites of constitutionally mandated due process, a matter to be fully explored at a pretrial

---

[2]The majority chides defendant for not "fully develop[ing]" this line of argument below, but apart from the circumstance that the argument rests on principles we have already recognized, the criticism is particularly inapt in the context of an opinion resting upon an post hoc appellate construction of a Wade hearing.

Wade hearing.  Inasmuch as such a hearing never took place, and the record created at the Herner proceeding designedly was not a functional Wade equivalent, the order of the Appellate Term should be reversed and the matter remitted for a new trial, to be preceded by an actual, properly noticed Wade hearing (see People v Burts, 78 NY2d 20, 25 [1991]).

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Rivera.  Judges Pigott, Abdus-Salaam and Fahey concur.  Chief Judge Lippman dissents in an opinion in which Judge Stein concurs.

Decided December 17, 2015